I. T. Pryor *et al.* v. G. T. Bryan, *County Treasurer, et al.* Atchison Topeka & Santa Fe R. R. Co. ' v. G. T. Bryan, *County Treasurer, et al.*

(Filed July 6, 1901.)

1. TAXATION ON INDIAN RESERVATION. An Indian reservation which is by an act of the territorial legislature, attached to an organized county for taxing purposes, becomes a part of the taxing district of such organized county.

2. COUNTY ASSESSOR PROPER OFFICER TO ASSESS PROPERTY ON SAME. An Indian reservation attached to an organized county for taxing purposes, being a part of the county taxing district to which it is attached, the county assessor of such organized county is the proper officer to assess the property in such reservation, for taxation.

3. EXEMPTIONS—Allowed, When. The taxing power of a state or territory is a legislative power and the legislature may exempt

from taxation, in whole, or for a'l except specified levies on any class of property, unless prohibited by constitutional provisions, so long as it affords to all property equal protection of the laws, and makes no unequal or unfair discrimination in taxing different kinds or classes of property; but all property of the same kind and in the same condition, used for the same purposes and afforded equal protection of the law, must be subjected to the same taxation.

4. **POWER OF LEGISLATURE TO EXEMPT FROM TAXATION..** An act of the territorial legislature, which exempts from taxation all property on an Indian reservation attached to an organized county for taxing purposes, except for territorial and court funds.. where the property on such reservation receives no benefit, or at. most, a very small benefit from such other tax funds of the organized county, is not void for conflict with the constitution of the United States, or with section 6 of the organic act of the Territory of Oklahoma.; and the legislature is the sole judge of the propriety or wisdom of exempting such property from taxation for such other funds.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, Trial Judge.*

· *S. H. Harris, James B. Diggs* and *William L. Barnum,.* for I. T. Pryor *et al.*

*Henry E. Asp, J. R. Cottingham, C. O. Blake,* and *John. W. Shartel,* for the A. T. & S. F. R. R. Co.

*A. R. Museller,* and *Horace Speed,* for defendants in. error.

Opinion of the court by

BURWELL, J.: Case No. 1042 is an action commenced by I. T. Pryor and others against G. T. Bryan, county treasurer of Noble county, and others, to enjoin the collection of certain taxes levied against the property of the plaintiff for the year 1899, which property during that year was located in the Ponca and Otoe Indian reservation. Case

No. 1046, *The Atchison, Topeka & Santa Fe Railroad Company v. G. T. Bryan, County Treasurer, and others,* is for the same purpose; and as the law questions are the same in each case we will consider them together.

By article 6 of chapter 43 of the Session Laws of 1895, it is provided:

"That section 13, article 2, chapter 70 of the Oklahoma statutes relating to revenue, be and the same is hereby amended so as to read as follows: Section 13. That when any cattle are kept or grazed, or any other personal property is situated in any unorganized country, district or reservation of this territory, then such property shall be subject to taxation in the organized county to which such country, district or reservation is attached for judicial purposes, and the board of county commissioners of the organized county or counties to which such unorganized country, district or reservation is attached, shall appoint a special assessor each year, whose duty it shall be to assess such property thus situated or kept; such special assessor shall have all the powers and be required to perform all the duties of a township assessor, and shall give a similar bond and take the same oath as required of such township assessor, and receive the same fees as a township assessor, and the officer whose duty it shall be to collect the taxes in the organized county to which such country, district or reservation is attached, shall collect the taxes, and is vested with all the powers which he may exercise in the organized county, and his official bond shall cover such taxes, etc."

The right to tax property in these reservations, when located within the boundary lines of the territory, is no longer an open question. (*Gay v. Thomas,* 169 U. S. 264) But in 1899 the territorial legislature enacted the following statute, which will be found on page 218 of the Session Laws of 1899:

"That from and after the passage and approval of this act, no taxes shall be assessed, levied or collected in any unorganized country, district or reservation which shall be or which may hereafter be attached to any county for judicial purposes, except taxes for the territorial and court funds. All acts and parts of acts in conflict herewith are hereby repealed."

The question now presented is, Has the territorial legislature the power to tax the property in these reservations for territorial and court funds, and not for other county purposes? The plaintiffs in error insist that the Ponca and Otoe Indian reservations, although attached to Noble county for taxing purposes, form a separate taxing district, and therefore the rule of uniformity throughout the taxing district does not apply. Without determining at this time as to whether under our organic law the legislature must adopt a uniform rule for taxing all property within the taxing district, we will consider briefly the effect of attaching these reservations to Noble county for taxing purposes.

When the law of 1895 was first enacted, we were under the system of township assessors; therefore the legislature provided that the county commissioners of the county to which any Indian reservation was attached for taxing purposes should appoint a special assessor each year, whose duty it should be to assess the property in such reservation, and that such special assessor should have all of the powers and should be required to perform all of the duties of a township assessor, and that he should give a similar bond and take the same oath as required of such township assessors, and receive the same fees. And by this same

section it was provided that the officer whose duty it was to collect the taxes in the organized county to which such country, district or reservation was so attached, should collect such taxes, and was vested with all the powers which he might exercise in the organized county, and his official bond by the act was made to cover all such taxes which might come. into his possession. From the provisions of the act of 1895 it will be seen that the legislature treated these reservations as it did the townships in the same county, and they were under the same rule; and while they were not, in fact, a part of Noble county, that is, the county lines were not extended around them, still they were attached to Noble county and became a part of the same taxing district; and the legislature provided for the appointment of a special assessor each year for these reservations, so that they might, as nearly as possible, be placed under the same system as the townships; and when the legislature in 1897 did away. with the township assessors, and provided one assessor for each county, the act repealed the other statute regarding special assessors for these reservations, and the county assessors in the counties to which the different reservations were attached for taxing purposes were thereby empowered to assess all of the property in their respective counties, and this power was not necessarily limited to the territory within the county lines, for the law which directs the county assesor to assess the property in his county, means also that he shall assess the property in the Indian reservation attached to his county for taxing purposes; and while such reservations. may, in fact, be clear outside the lines of the county, it is by law placed under the same jurisdiction, and subject to the same rules. Once a reservation is attached to a county for tax-

ing purposes, it thereby becomes a part of the county tax-ing district to which it is attached. (*Gay v. Thomas* 169 U. S. 277 and *Russell v. Green,* [Okla.] not officially reported, 62 Pac. 817.) It therefore necessarily follows that, if the law in question is to be upheld, it must be upon some theory other than that the Ponca and Otoe Indian reservations form a separate taxing district.

This brings us to the consideration of the power of the legislature to exempt the property in these reservations from certain taxes which are imposed upon the property within the limits of the organized county to which they are attached for taxing purposes.

The power of taxation is a legislative power, and the right to select certain classes or species of property for taxation, and the right to exempt from taxation other classes of property is unrestricted except by constitutional inhibitions. Therefore, while many cases have been cited on behalf of both appellants and appellee in these cases, the great majority of them are of little assistance to us, as they are interpretations of constitutions which very materially differ from our organic act. We will, however, uotice a few of these authorities before commencing upon the limitations placed upon our territorial legislature re-garding taxation; but before doing this we will here suggest that, unless prohibited by organic law, the legislative branch of the state has the absolute power to say what property shall be taxed, for what purposes it shall be taxed, and what persons or property shall be exempted from tax-tion; provided however, that it affords all persons and property equal protection of the laws; and the legislative branch of the government is the sole judge of the wisdom

of such matters. (*McCullough v. Maryland*, 4 Wheat. 415 *Bank v. Billings*, 4 Peters, 514; *State v. Lancaster County*, 4 Neb. 540.)

In Cooley on Taxation, page 144, it is said·

"It remains to see what is the rule regarding exemptions where none is prescribed by the state constitution. The exemptions commonly made by express statute are based upon reasons so forcible that they have seldom been contested. We refer now to the exemptions of tools of trade, of the limited personal property of very poor persons; the property of corporations or associations, devoted exclusively to the work of public charity, or in other directions where what they accomplish operates in the relief of public burdens and the like. Exemptions of property of religious societies, and of persons or corporations engaged in instruction, have not passed unchallenged on the score of right and policy; but the power to make them is unquestioned. And upon the general subject of exemptions, the following rules are deduced from the authorities:

"1. The general right to make exemptions is involved in the right to apportion taxes, and must be understood to exist wherever it is not forbidden. The right is supposed to be exercised on reasons of state policy, and presumptively such exemptions contribute to the general public benefit.

"2. Exemptions thus granted· on considerations of public policy, may be recalled when the legislative view of public policy shall have changed. To the individuals, corporations or associations benefitted by them, they are to be regarded as favors or privileges merely, to continue during the pleasure of the sovereignty, and there can be no breach of faith—certainly no want of power—in terminating them at any time."

The first case we will notice is that of *Township of Pine.*

*Grove v. Talcott,* 19 Wall. (U. S.)     666.   In   this   case.
Mr. Justice Swayne, speaking for the court, said:

"The eleventh clause of the same article, (speaking
of sec. 11, of art, 14 of the constitution of the state of
Michigan,) declares that the legislature shall provide a
uniform rule of taxation, except as to property paying
specific taxes, and that taxes shall be levied upon such prop-
erty as shall be prescribed by law. The object of this
provision was to prevent unjust discriminations.  It pre-
vents property from being classified and taxed as classed
by different rules.  All kinds of property must be taxed
uniformly, or be entirely exempt.  The uniformity must be
coextensive with the territory to which the tax applies. If
a state tax, it must be uniform all over the state.  If a
county or city tax, it must be uniform throughout such
county or city."

It will be seen that by the express terms of the con-
stitution of the state of Michigan, unformity was re-
quired.

The next case is *Hutchinson v. Ozark Land Company,*
38 Am. State Rep. 258.  Here the legislature of Arkansas
divided a county into two judicial districts and levied a
different rate on the assessed valuation of each district;
and the court said:

"It is not within the power of the legislature to divide
the county into taxing districts, and thereby to authorize
the levy of a greater tax in one part of the county than in
another, for a purpose which is not local but is purely a
county purpose, if there is a provision in the state consti-
tution exacting uniformity of taxation."

This decision, like the one just above cited, is based
upon a constitutional provision requiring uniformity of
taxation.

In Tennessee the legislature created a levee district, and provided in the act that all of the lands in the district should be taxed for levee purposes, except certain designated lands which were exempted from such tax. The state constitution provided:

"All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the state, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer or his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that the taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value.

"The general assembly shall have power to authorize the several counties and incorporated towns in this state, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value upon the principles established in regard to state taxation."

In commenting upon these sections of the constitution, the court, in the case of *Reelfoot Lake Levee District v. Dawson,* 36 S. W. Rep. 1043, said:

"The language of both sections is plain and positive. Its meaning cannot be mistaken nor its force evaded. Both sections are mandatory in at least two points that are urged against the present act.

"Section 28 (the 1st paragraph quoted) imperatively requires, (1,) that all property, of whatever kind, except that mentioned for conditional and unconditional exemption, shall be taxed; and, (2,) that all such taxable property shall be taxed according to its value. Section 29 (the second paragraph quoted), though not repeating the first sentence of section 28, makes the same imperative requirements; so that whether a given tax law fall under the one section or the other, or under both of them, those requirements are equally applicable and mandatory. In every instance the requirements that all property (except that mentioned for exemptions) shall be taxed, prohibits the legislature from making additional exemptions. (*Railway Company v. Wilson Company,* 89 Tenn. 608, 15 S. W. 446; *City of Memphis v. Memphis City Bank,* 91 Tenn. 588, 19 S. W. 1045.) And likewise the requirement that all such property shall be taxed according to its value prohibits the legislature from laying a tax on any property in specie or by the acre. Under the constitution of 1796 the lands were taxed by the hundred acres, but the constitution of 1834. like that of 1870, contained the provision that: 'All property shall be taxed according to its value.' This means that every property taxed shall be graduated by the value of the property on which it is laid. (*Jenkins v. Ewin,* 8 Heisk, 478; *Chattanooga v. Nashville C. & St. R. Co.,* 7 Lea, 561; *Railroad Company v. Morrow,* 87 Tenn. 406, 11 S. W. 348.")

The question of uniformity of taxation again arose in June of 1898, in the case of *Jones v. The City of Memphis,* 47 S. W. 138. The legislature had annexed certain outlying territory to the city of Memphis and provided a different rate of taxation for it from that levied on the property in the original city limits for a period of ten years. The court said:

"This court is of the opinion that sections 3 and 4 of chapter 6 are clearly unconstitutional and void, inasmuch as they exempt the annexed territory from taxes for fire, light and police protection for ten years, and for the same time expressly prohibit the district from having the advantages of this protection. This court is of the opinion that taxation must always be uniform and equal throughout the extent of the same jurisdiction; that state taxes must be equal and uniform throughout the state; that county taxes must be equal and uniform throughout the county; and that a city tax must be equal and uniform throughout the city, so far as revenues for current expenses or future wants are concerned; and that this principle is fully sustained and illustrated in the decisions of this court." Citing authorities.

Here for the second time the decision of the supreme court of that state is based clearly upon the constitution of that state which provides that taxes must be uniform and equal throughout the state.

In the case of *Hale v. City of Kenosha and others,* 29 Wis. 599, the court said:

"If property is taxable for any purpose, it must be held taxable for all purposes of general taxation, under the rule of uniformity prescribed by section 1, article 8 of the state constitution."

"This section is as follows: 'The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe'."

It is true that the courts of Illinois, Ohio and several of the other states have laid down the rule that all property subject to taxation must be taxed by a uniform rule throughout the taxing districts; but an examination of all

of these cases, so far as we have been able to investigate, shows that they are based upon the wording of the respective constitutions.

Let us now see what language has been used in our own organic act. Section 6 provides:

· "That the legislative power of the territory shall extend to all rightful subjects of legislation, not inconsistant with the constitution and laws of the United States, but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed on the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents, nor shall any law be passed impairing the right to private property, nor shall any unequal discrimination be made in taxing different kind of property, but all property subject to taxation shall be taxed in proportion to its value."

By this act the legislature is bound. It must observe and respect the limitations written therein; but this is all. The right of the territorial legislature to enact laws for the levying and collecting of taxes is granted in the organic act, which provides, "that the legislative power of the territory shall extend to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States," etc., and it is only when it violates some provision of the laws of congress or the constitution of the United States that its laws are void. The people of the different states in preparing their state constitutions, recognizing that justice demands that all classes of property subject to taxation should bear their just proportion of the cost of government, and that favoritism should not be shown any class or kind of property, have written "uniformity" or words

of like meaning, into their organic law; and the courts following these provisions have declared over and over again that taxation must be uniform throughout the taxing districts; and this doctrine has been declared so often and its justice is so apparent, that even the bar have not stopped to consider the powers of the legislature in such matters when not bound by such constitutional restrictions. Section 6 of the organic act nowhere provides for uniformity of taxation. Its provisions are that: "No tax shall be imposed on the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents, nor shall any law be passed impairing the right to private property, nor shall any unequal discrimination be made in taxing different kinds of property, but all property subject to taxation shall be taxed in proportion to its value," etc. This language is not synonymous with uniformity of taxation. It only provides that: "There shall not be made any unequal discrimination in taxing different kinds of property." And we take it that the word "unequal," as used in section 6 of the organic act, is synonymous with the word "unfair." If this be the correct interpretation of this word, then may it be said that there can be no discrimination in taxing different kinds or property? The language that there shall be no "unequal" discrimination in taxing different kinds of property clearly indicates that the legislature may dis criminate or make a difference in taxing different kinds of property, but that such discrimination shall be equal or fair. Unless we give this clause of section 6 this interpretation the word "unequal" is a meaningless word. We therefore prefer to hold that congress understood and meant just what it said. However, it may be contended that the ques-

tion here is not the power to discriminate in taxing different kinds of property, but the power to discriminate in taxing property of the same kind, and, in a sense, this is true. But if the legislature can discriminate in taxing different kinds of property, why may it not fairly discriminate in taxing property of the same kind, provided that it is differently situated and unequally afforded the advantages of government? Property of the same kind in the same condition, and used for the same purpose, must be taxed by a uniform rule; otherwise each citizen would not be afforded equal protection of the laws. But even this rule does not prevent the legislature from making exemptions as to certain kinds or classes of property.

It has been held in Washington in the case of *Columbia & P. S. R. R. Company* v. *Shelberg,* 34 Pac. 163, that where the legislature enacted a gross earnings law as to all railroads, and exempted them from all other taxes, such law did not violate a provision in the organic act which was to the effect that: "All taxes shall be equal and uniform, and no distinction shall be made in the assessments between different kinds of property, but the assessments shall be according to the value of the property." And also that the law entitled the railroads to have exempted from taxation property in the state, which was in no way used in operating such road. This case was much stronger for the state than the one now under consideration, for there was no difference in any way between the property of the railroad company, which was not used in operating its road, and the property of other citizens. And while we do not approve of the conclusion reached by that court under the facts of that particular case, we cite it to show the extent

to which the courts have gone under restrictions more sweeping than those in the organic act.

In 1892 a similar case was presented to the supreme court of North Dakota, *Northern Pac. Ry. Co. v. Barnes,* 51 N. W. Rep. 386. This case involved the legality of a law which compelled all railroads to pay a certain per cent of their gross earnings, and exempted them from all other taxation. The company owned thousands of acres of land in that jurisdiction, which was in no way used in operating the road. The court held that the law, notwithstanding their organic act, the provisions of which are identical with our own, exempted all lands of the railroads from taxation, even though they were in no way used in operating such road.

The Dakota court in passing upon the question, in our judgment, failed to recognize the fundamental doctrine that property similarly situated, used for the same purpose, and which is of the same kind, should be taxed the same. Therefore when the case of *The Northern Pac. R. R. Co. v. Walker,* 47 Fed. Rep. 681, which involved the identical question presented in the case last cited, was considered by the circuit court of the United States for the district of North Dakota, Caldwell and Thomas, J. J., presiding, they held that the act, in so far as it exempted the lands of the company which were not used in operating the road, was in violation of the organic act of the territory of North Dakota, and also in violation of the constitution of the United States, using this language:

"The prohibition in the organic act against making, 'any discrimination in taxing different kinds of property'

necessarily implies a prohibition against any discrimination in taxing the same kind of property. It establishes the just and reasonable rule which has become fundamental in our American system of taxation, that the burdens of taxation shall fall equally upon all owners of the same kind of property. If the act in question is valid, then the wholesome and just provisions of the organic act, intended to secure equality in the burdens of taxation, and to prevent discrimination and oppression, are meaningless."

This language at first blush would perhaps seem to hold that the legislature has no power to discriminate in taxing property of the same or different kinds. This, however, is not correct. In considering this opinion, we should not forget the question presented to the court for its decision, nor should we take a portion of the opinion alone and separate it from the rest; but this language should be taken in connection with the language which precedes it, and which clearly enunciates the correct rule as we understand it, and which the learned justices had in mind when they used the language above quoted. They said:

"The franchises of railroad companies, and their earnings, and railroad property, as before defined, may well be classed by themselves for purposes of taxation, and taxed by a different method or rule from that applied to other property. This may be done because it is unlike other property. It is the difference in the character, condition, and use of this kind of property from other property that justifies the difference in classification and mode of taxation. Property of the same kind, in the same condition, and used for the same purpose, must be taxed by a uniform rule without regard to ownership. The legislature having selected land as a subject of taxation, all lands under the same conditions are subject to be taxed. The law for the

taxing of lands must operate equally and uniformly upon all lands, the condition and use of which are similar. While property may be classified for the purposes of taxation, between the subjects of taxation in the same class, there must be equality. Property of the same kind, and in the same condition, and used for the same purpose, cannot be divided into different classes for the purposes of taxation, and taxed by a different rule because it belongs to different owners. But this is precisely what the act under consideration seeks to do. It exempts the land of the company from taxation simply and solely because they belonged to the company, and taxes all other lands by a uniform rule according to their value. It was not competent for the legislature, either under the organic act or the fourteenth amendment of the constitution of the United States, to classify the lands of the territory, for the purposes of taxation, into lands owned by the railroad companies and lands owned by all other persons, and declare that the former should not and the latter should be taxed."

The opinion acknowledges the rule that the legislature has the power to discriminate between property differently situated or in different conditions, or used for different purposes. However, we are not compelled to rely wholly upon general principles as recognized by the courts and text writers, as there are cases which are squarely in point."

The constitution of Missouri provides that: "All property subject to taxation in this state shall be taxed in proportion to its value." This is exactly the same language used in our organic act. At the time this constitution was in force in Missouri, the law provided that the salaries of the judges of the different courts should be paid out of the state treasury, and in addition to the salaries stated they were entitled to certain fees. The legislature, recognizing

that the work of the judges in St. Louis county was much heavier than that of the other judges throughout the state, enacted the following statute:

"Be it enacted by the general assembly of the state of Missouri:

"Sec. 1. That the county court of St. Louis County is hereby authorized and and required, to pay out of the county treasury of St. Louis county, the to judge of the St. Louis circuit court, the judge of the St. Louis court of common pleas, and the judge of the St. Louis criminal court, each, such sum, in addition to the amount now allowed to such judge by law, as will make the total amount of compensation received by said judge, not to exceed the sum of $3,000.

"Sec. 2. The additional compensation herein provided for, shall be paid at the same stated periods, as the salary of the said judges respectively, are now paid by law."

When the judge of the court of common pleas of St. Louis county presented his claim for salary to the county court, it was disallowed on the ground that the law compelling St. Louis county to contribute to the salary of the judges in that county, when all of the other judges throughout the state were paid exclusively from the state treasury and from fees independent from the other counties, was void and unconstitutional under the provisions of the state constitution, which required that: "All property subject to taxation shall be taxed in proportion to its value." The court said: in the case of *Hamilton et al. v. St. Louis County Court,* 15 Mo. p. 20:

"When we turn now to the consideration of the act in question, its injusice is apparent, upon its own face. The

citizens of a county who have been required to pay their proportion of all the expenses of administering the law throughout the whole state, are required in addition, to pay the largest part of the expense of administering the same law in their own county. The wrong done to the county is palpable, but with this admitted, the constitutionality still remains untouched.

"When the 19th section of the declaration of rights is invoked, to protect the county against this act, it is necessary to inquire into the meaning of the declaration, 'that all property, subject to taxation in this state, shall be taxed in proportion to its value.' The clause is evidently mandatory upon the general assembly, when exercising the taxing power, and furnishes a rule which is not to be departed from. What property shall be subjected to taxation is left to their discretion, but when they have selected the subjects, the rule for assessing the tax is in proportion to the value of the property. It is not necessary in this case to decide, whether a different rate of taxation can be imposed upon different descriptions of property, all being taxed by an *ad valorem* tax. The idea of equality in taxation, is certainly not the prominent idea conveyed by this clause; nor can we suppose that it was designed to be conveyed, when we consider that so many constitutions of other states previously adopted, contain clauses expressly enjoining equality in taxation, and when the insertion of a word or two in the clause would have expressed the idea clearly. It may be further observed, that if equality in taxation is required by this section, then the provision in the first section of the 10th article, that the lands of non-residents shall never be taxed higher than the lands of our citizens, is entirely supurfluous * * * * * *. But it is not the wish of the court to avoid deciding the .case upon principles that will settle the controversy, and it will therefore be assumed, that in order to meet this additional demand upon the county treasury, it will be necessary to increase the county tax. Does this fact establish a repugnancy between

the act and the constitution?    Does it disturb the rule that requires property to be taxed in proportion to its value? * * * * *    But, it is said, the general assembly cannot pass an act by which a burden that ought to be borne by the state treasury, shall be cast upon the county treasury, and thus the county taxation be increased.    The question we are now considering is, whether an act that increases the county tax in any one county, is repugnant to the constitutional provision that requires all property to be taxed in proportion to its value.    The question, whether the general assembly has the constitutional power to pass an act that will have this affect does not in any degree depend upon the consideration or motives that produce the passage of the act.    The objection to the law is, the effect on county taxation.    Now    the    same    effect would be produced by a law which required the county of St. Louis to expend an equal amount of money, upon roads, public buildings, the pay of jurors, or other matters of county interest, which the general assembly might judge to be properly a burden upon the county treasury, and such law would, upon the point now in discussion, be as liable to the objection of violating the constitution as the act now under consideration.

"All county expenses, for which a tax is to be levied, or of which the county court is authorized to make payment, are either expressly created or are authorized by law.    The    peculiar    position and circumstances of any county may require, in the the judgment of the general assembly, the expenditure of money for the accomplishment of an object of the highest interest to its inhabitants, and exclusively local in its character and benefits, but there may be no law authorizing the expenditure.    It is not doubted that the general assembly have the constitutional power to direct the authorities of the county to cause the work to be done, and payment to be made out of the county treasury. * * *    The general assembly must be regarded as charged with the duty of promoting, by proper enactments, the interest of the whole and of each portion of the

community, and authorized to impose the burdens, arising
from local works or services, upon the inhabitants of the
locality benefited. When, in the exercise of their judg-
ment, they determine that the benefit is so exclusively local
as to require that the expense shall be borne by the treas-
ury of a county, rather than by the state treasury, the
clause of the constitution, requiring property to be taxed
in proportion to its value, is not violated. We cannot re-
vise their judgment in such case, under this clause of the
constitution, and declare their acts inoperative  In rela-
tion, then, to the act now in question, it is the opinion of
the court, that it is not repugnant to the 19th section of
the declaration of rights."

These principles, as well as the power of the legisla-
ture to exempt, in whole or in part, property from taxation,
are recognized by Mr. Cooley in his work on Taxation,
(page 137,) where he says: "The taxing which is a part of
the legislative power of the state, is supreme, except where
limitations are imposed." And even in states where there are
constitutional provisions to the effect that taxation shall
be uniform, it has been universally held that such pro-
visions do not prohibit the legislature from making ex-
emptions. It is only when the constitution, in express
terms, prohibits exemptions, that none can be made. Of
course in this territory exemptions must be made by general
and not special laws. But we think it cannot be urged
against the law in controversy that it is a special law, for
it affects all property located in Indian reservations in the
territory which are attached to organized counties for tax-
ing purposes. It has been held that the legislature has the
power to exempt from taxation tools of trade, and books
and furniture used in the professions, and even firemen
and others have been exempt from the payment of poll tax;

nor has the legislature stopped at these, but in several states the homestead and other property of the family, not exceeding a stated value, are exempt, and these exemptions have been upheld by the courts. If these exemptions are not void, we can see no good reason why our legislature may not exempt the property in the Indian reservations, except for territorial and court funds. It is well known that all persons living on these reservations do not enjoy the advantages of those living in the organized counties; and this being true, the language of Judge Brewer in the case of *Francis v. A. T. & S. F. R. R. Co.,* 19 Kan. 309, in speaking of taxation in the unorganized counties of the state of Kansas, is applicable:

"May not the legislature prescribe the conditions upon which state protection will be afforded to property in that territory? And what section of the constitution limits the extent and character of such conditions? Briefly, it may be stated, that the unorganized counties are necessarily a part of the state taxing district, or they may be excluded by legislative action; if the former, then, if the claim of the counsel is correct, that a failure to provide for taxing all the property in the taxing district is fatal to the tax, there has been hitherto no valid state tax; if the latter, then the property in those counties is outside of the taxing district, yet subject to taxation; and where is the constitutional restriction on the power of the legislature?

"It is doubtless true, that results do not change rules, and that consequences may not be invoked to overthrow established principles, and that courts may not disregard plain constitutional requirements to save from the injurious effects of illegal legislative action; but surely, the fact that during these sixteen years of state taxation, the validity of no state tax has ever been challenged on the ground that the machinery for assessment and taxation plainly leaves

unreached for taxation a portion of the property within the state, the taxing district, is evidence of no little value, that, by common judgment of all, the constitutional provision above quoted does not require such construction. But if it be not unconstitutional to relieve all property in the unorganized counties from state taxation, is it any more unconstitutional to relieve only a part of such property? Does the law become more unconstitutional the nearer it approaches to a full compliance with the strict letter of the constitution?"

And so here, cannot the territorial legislature prescribe the conditions upon which the persons living upon the Indian reservation may enjoy the benefits of county organization? We think it may; and there is nothing in organic act which prevents the law-making power from subjecting property to taxation for certain purposes, and exempting it from taxation for other funds. It would be a strained construction of the organic act to say that property may be absolutely exempted by the legislature, but that it cannot make a partial exemption of it. All the organic act requires is that the legislature shall cause all property subject to taxation to be taxed in proportion to its value as to the funds or purposes for which the legislature may designate, keeping in mind, however, the fundamental principle that all property of the same kind and in the same condition, used for the same purposes, and afforded equal protection of the law, must be subjected to the same taxation. The powers of the legislature extend to all rightful subjects of legislation, not in conflict with the laws of congress or the constitution of the United States. The law in controversy, as heretofore observed, in no way conflicts with either, and its enactment was clearly within the legislative power.

In the case of *Carroll v. Gerlach, as Treasurer, et al.* decided at the present term of court, it was held that a court of equity will not restrain the collection of a tax until the party has exhausted his statutory remedy before the board of county commissioners, and given that body an opportunity to correct the error, if any has been made. But that rule does not apply where the assessment or levy is absolutely void. Therefore the rules enunciated in this case in no way conflict with the case last decided.

Therefore the judgment of the trial court is reversed and each of the cases considered herein, is hereby remanded to the lower court, with instructions to enter judgment perpetually enjoining the collection of all taxes in controversy herein, except the taxes for territorial and court funds, upon payment by the respective appellants of the whole amount of said taxes and penalties, if any, accrued prior to the bringing of the suits herein, into court, or the payment of such taxes to the treasurer of Noble county, such payment to be evidenced to the court by the treasurer's receipts therefor. The costs of each of these cases to be taxed to the county of Noble.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.