## STATE ex rel. CITY OF TULSA v. MAYES, County Treas., et al.

No. 25288.   Oct. 22, 1935

H. O. Bland, E. M. Gallaher, Carl Ravis, Langley & Langley, Bert E. Johnson, O. H. Searcy, and C. L. Hamilton, for petitioner.

D E. Martin, County Atty., and R. A. Wilkerson, for respondents.

RILEY, J. This is an original action in which the city of Tulsa seeks a writ of prohibition against W. E. Mayes, as county treasurer of Mayes county, and Lee Battenfield, as judge of the county court of said county.

The application for the writ alleges that about October 30, 1933, Earl Ward, the duly appointed tax ferret for Mayes county, filed with the county treasurer a report to the effect that the real property, dam, conduit lines, and appurtenances thereunto connected, constituting the Spavinaw water project, had been omitted from the tax rolls of Mayes county for the years 1923 to 1932, inclusive; that thereafter notice was given to the city of Tulsa by the county treasurer; that the city of Tulsa had filed written protest; that upon a hearing had before the treasurer an order was entered by the county treasurer placing said property upon the tax rolls of Mayes county and assessing it at $1,472,020 for each of the ten years; that appeal was duly taken to the county court of Mayes county; that the county court had assumed jurisdiction and made an order for a hearing on January 22, 1934.

It is alleged that the property involved is the property of the city of Tulsa, and not subject to taxation in Mayes county, or any other county, and that neither the county treasurer nor the county court of Mayes county has jurisdiction or power to place property of the city of Tulsa upon the tax rolls or assess it for taxation.

This court is asked to issue a writ prohibiting further proceedings toward assessing said property for taxation or placing same upon the tax rolls of Mayes county.

Respondents have filed their response and in substance allege that the city of Tulsa has not acquired said property according to law. It is admitted that the city has acquired possession of the property, but it is specifically denied that it acquired title thereto in the manner provided by law, in that the city did not use the agencies and means in the manner provided by law for the acquisition of title to real estate by a municipality, in that the attempt was made to acquire the property by and through a water commission, instead of by the mayor and board of commissioners. It is urged that the amendment to the charter of the city of Tulsa under which the water commission assumed to act is in conflict with the Constitution and constitutional laws of the state, and therefore void; that the property is taxable for the further reason that the city of Tulsa is engaging in business in connection with said property not authorized by section 6, art. 18, of the Constitution, in that it is engaged in the business of selling and distributing water to private persons, firms, and corporations and other municipalities outside the limits of the city of Tulsa; and that the city is engaged in the unauthorized business of selling boating rights and privileges and hunting and fishing licenses; that by reason thereof the enterprise should be classified as private business and the property used should be declared taxable the same as privately owned property.

The parties have filed a lengthy statement of facts upon which they rely in this action. Those facts about which there is controversy, as to their effect, are: The amendment to the charter of the city of Tulsa creating a water commission and prescribing its power and duties, the material portions of which read:

"Section 1. There is hereby created a 'Water Commission' consisting of five (5) qualified electors of the city of Tulsa whose rights, powers and duties shall be as herein provided.

"Section 2. The 'Water Commission' herein mentioned shall consist of five (5) members one of whom shall be the Water Works and Sewerage Commissioner provided for in the charter who shall be ex-officio chairman and member of said 'Water Commission' and four (4) other members who shall be elected and serve a term of four (4 )years from and after their election, except as herein provided."

And:

"Section 12. The 'Water Commission' herein shall have and exercise full, complete and exclusive rights, powers and duties in the doing and performing of all and every of the things to be done and performed in the construction, operation and maintenance of the water system or systems of the city of Tulsa ; and the acquiring of real estate by purchase, condemnation proceedings, donation, bequest, lease, or other legal method of acquisition necessary and proper for the construction, operation and maintenance of such water system or systems; provided, that in all matters requiring action at law on the part of the city of Tulsa, such action at law shall be instituted, prosecuted and carried on in the name of the city of Tulsa by its officers as by law provided."

The agreed statement then reads:

"4. Pursuant to said amendment to said charter as above outlined, and during the years 1922 and 1923, the said Water Commission purchased amicably and appropriated by eminent domain proceedings a large acreage of land, lying on Spavinaw creek (the upper part located in Delaware county, and the lower, the major portion, located in Mayes county) lying near the old town of Spavinaw, for a basin for a reservoir, and it constructed a dam across said creek at a point in section 15, township 22 north, range 21 east, in Mayes county, creating a large lake, and inundating said acreage; and said plaintiff city also by amicable purchase and condemnation proceedings acquired a strip of land running from said dam across Mayes county through Rogers county, and into Tulsa county, to a point near the city of Tulsa, where an emergency storage reservoir was constructed, and on this strip the plaintiff city laid a concrete conduit line, this strip being about 100 feet in width, except in certain places, wider, never exceeding 200 feet in width; and, the plaintiff city made improvements of its water distribution system in the city of Tulsa; and since about April, 1924, the plaintiff city has diverted water from said creek, flowing out of said reservoir through said conduit line, to said plaintiff city, a distance of about 70 miles, and which water the plaintiff city as a municipality has been selling to its residence and inhabitants for domestic. industrial, and sanitary purposes, using a portion thereof for fire protection purposes. During said period of time said plaintiff city has been selling water to outlying municipalities, namely, Owasso, Dawson, and the little town of Spavinaw, and during all of said time, said plaintiff city has been furnishing water for a fixed charge per month to individuals owning land through which land said conduit line runs, there having been placed a water tap on each separately owned tract of land through which said conduit line runs at time of construction of the line.

"5. During all of said time, and approximately since April, 1924, the plaintiff city has granted by contract to individuals the right to maintain and operate a boating business upon said lake, which consists of storage boats, and renting of boats for profit.

"6. During all of said time, the plaintiff city has issued and sold to the public fishing and hunting privileges upon said lake for a fixed charge; and shortly prior to the institution of this action, the charges for such privileges to residents of the city of Tulsa was fifty per cent. of the charge made of nonresidents of the plaintiff city.

"7. During a portion of said time, and at the time of the institution of this suit, the plaintiff city rented to individuals a plot of ground lying west of the said dam, near said dam, for a fixed annual rental, for the purpose of the lessee keeping and retailing to fishermen live bait for fishing purposes.

"8. The title to all of the aforesaid land so taken in said water projects was taken in the name of the plaintiff city, and said land. and the improvements belonging exclusively to the said plaintiff city.

"9. The cost of said land, and the construction of the improvements, etc., consisting of said water project, known as the Tulsa-Spavinaw water project, aggregated about nine million dollars. Bonds were issued by the plaintiff city to finance said undertaking. The bonds are ad valorem or sinking fund bonds. The revenues from the sale of said water are converted into the general fund of the plaintiff city, and said revenues are considered in the matter of

making levies for payment of the expenses of the plaintiff city's government, and indirectly, the revenue accruing from the operation of said water project are reflected in part payment of said bonds."

It will be observed that it is agreed that the title to all the land was taken in the name of the plaintiff. city, and that said land and improvements belong exclusively to the said plaintiff city.

Section 6, art. 10, of the Constitution provides that "* * * all property of the United States and of this state and of counties and of municipalities of this state * * * shall be exempt from taxation. * * *"

To the same effect is subdivision 3 of section 12319, O. S. 1931.

There is no mention of the use to which property of a municipality is put as a condition to its being nontaxable. The provisions of the Constitution and the statute are without condition or limitation.

This would seem clearly to place it beyond the power of any authority in this state, including the Legislature and this court, to tax property owned by any municipality of this state. There is no more authority for taxing such property than there is for taxing property of the United States or the property of this state.

But defendants contend, notwithstanding the stipulation, that the city of Tulsa is not the owner of the property involved because it did not acquire all the property in the manner provided by law.

The stipulation is that the city acquired said land by purchase amicably and by appropriation by eminent domain proceedings; what part was purchased and what part was acquired by eminent domain proceedings does not appear.

The contention of defendants, as we understand it, is that under section 6351, O. S. 1931, which provides: "the powers granted to and conferred upon cities, shall be exercised by the mayor and council of such cities, as provided by law," such power may be exercised only by the mayor and council of such cities.

This section applies only to cities organized under the general laws relating to cities. It has no application to cities having a charter adopted in accordance with the provisions of the Constitution. Many of the cities of the state, including the city of Tulsa, have adopted charters, abolishing the city council, and providing for a governing body to be composed of a mayor and a board of commissioners. Others have adopted charters abolishing both mayor and council.

When a charter is adopted by a city in the manner provided by the Constitution, such charter becomes the organic law of such city, and supersedes all other charters and the laws of the state relating to purely municipal matters. Owen v. City of Tulsa, 27 Okla. 264, 111 P. 320; City of St. Louis v. Western U. Tel. Co., 149 U. S. 465; State ex rel. v. Linn, 49 Okla. 526, 153 P. 826.

The charter of the city of Tulsa by section 1, art. 3, provides:

"All the powers conferred upon the city shall, unless otherwise provided in this charter, be exercised by a mayor and four commissioners, who together shall be designated as the board of commissioners."

By the amendment the water commission was created with the powers expressly delegated to it.

We know of no provision of law which prohibits the creation of a water commission by city charter and delegating to it the power of acquiring land by purchase, condemnation, or other legal method, for a waterworks system for the city, where it is required that all actions for such purpose be commenced, prosecuted, and carried on in the name of the city.

Defendants point to section 6403, O. S. 1931, which provides that the "council may purchase or condemn and hold for the city within or outside the city limits all necessary lands for * * * waterworks."

Section 10051, O. S. 1931, in effect since 1908, confers power upon cities generally to condemn land for certain specified and other public purposes.

In the City of Tulsa v. Williams, 100 Okla. 116, 227 P. 876, it is held that under the provisions of section 4411, C. O. S. 1921, the city had the power to "condemn and appropriate in the name and for the use of the city * * * such lands as may be necessary for the construction and operation of said waterworks." It does not appear, but we presume that such actions were prosecuted by the city. under the provisions of its charter.

There is no merit in the contention that the city had not proceeded in the manner provided by law in the condemnation of the lands for its waterworks project.

Defendants earnestly contend that because the city of Tulsa was selling water to private persons and other municipalities

outside its corporate limits; was selling boating privileges and licenses to hunt and fish on its reservoir, said city had thereby rendered its property liable to taxation notwithstanding the constitutional and statutory provisions above quoted.

The contention is that the city can condemn and hold property only for the purposes enumerated in the Constitution and statutes; that nowhere is the city given the power to condemn or purchase and hold property for the purpose of furnishing water to private individuals outside its limits, and particularly to other municipalities. The contention is that the city of Tulsa, or any other city, may engage in such business and only such which may be engaged in by a person, firm, or corporation by virtue of a franchise for said corporation; that the city may not grant a franchise to any person, firm, or corporation to furnish water to private persons or other municipalities outside its corporate limits, and therefore may not engage in such business itself, and therefore cannot lawfully purchase, condemn, and hold property for such purpose.

The power to engage in such business is given by the Constitution, sec. 6, art. 18. It is one given by the Constitution and may not be taken away by the Legislature. Municipal corporations being creatures of the state, they possess such power and such power only as the state confers upon them. Ordinarily these powers are conferred by the Legislature, but as above pointed out, certain powers may be conferred by the Constitution, and when so conferred may not be taken away by the Legislature. But it does not follow that where the Constitution confers certain powers upon a municipality, the Legislature may not confer additional powers. In fact, nearly all the powers which municipal corporations in the state possess are derived from acts of the Legislature.

Express authority for the furnishing and sale of water to private persons, corporations, and other municipalities outside the city limits is found in sections 6056-57, O. S. 1931, in effect since March 14, 1924.

Like authority to issue privileges or licenses for the purpose of hunting, fishing, etc., is found in section 6000, O. S. 1931, in effect since March 27, 1917.

We find no express authority for the city to contract with individuals for the right to maintain a boating business upon its lake consisting of storing boats and renting boats for profit, nor do we find express authority for leasing part of the land to purveyors of "live bait" to fishermen.

In support of their contention defendants cite Village of Swanton v. Town of Highate (Vt.) 16 L. R. A. (N. S.) 867, and Mayor, etc., v. Park City, 130 Tenn. 626.

In the Vermont case the law relating to property exempt from taxation is referred to but not quoted. Reference to the law will disclose that only property granted, sequestered, or used for public uses is exempt from taxation. It was held that such of the property as was owned by the municipality claiming the exemption and used in supplying the other municipality with electric lights was not used for public purposes and was therefore taxable.

The same is true in the Tennessee case. However, in the latter case a statement is made which is directly in conflict with the claim of defendants herein. It is:

"We think it clear that a reservoir within the boundaries of Park City, owned and operated by Knoxville for its own water supply, would not be subject to taxation by Park City."

It is the general rule that where the Constitution and laws of a state exempt from taxation all property of municipalities within the state, without reference to the use to which the property is put, it is exempt from all taxation regardless of the character of the use thereof. It is so held in Stewart, Co. Treas., v. City and County of Denver (Colo.) 202 P. 1085; Omaha v. Douglas County, 96 Neb. 865, 148 N. W. 938; City of Colorado Springs v. Bd. of Com'rs of Fremont County (Colo.) 84 P. 1113; City of Springville v. Johnson, 10 Utah, 351, 37 P. 577; City and County of San Francisco v. McGovern et al. (Cal.) 152 P. 980; Sumner County v. City of Wellington, 66 Kan. 590, 72 P. 216.

Under the plain provisions of our Constitution and the statutes enacted pursuant thereto, ownership of property by a municipality exempts it from taxation no matter to what use it may be put.

The use to which property is put is decisive of the question of exemption from taxation of property used for free public libraries, free museums, public cemeteries for religious or charitable purposes.

But authorities cited dealing with property so used are not in point by reason of the character of the exemptions in our Constitution and statutes, which, as heretofore

stated, do not limit the exemptions to the nature of the use of such property.

If follows that Mayes county is without power to tax property owned by the city of Tulsa in said county. The hardship that may be imposed upon said county or certain school districts therein by removing several hundred acres of land, otherwise taxable, from the tax rolls, is one that can be remedied only by amendment of the Constitution and laws of the state.

It is the judgment of the court that the writ be granted prohibiting defendants from further proceedings looking to the taxation of the property involved.

McNEILL, C. J., and BUSBY, PHELPS, WELCH, and CORN, JJ., concur, OSBORN, V. C. J. and BAYLESS and GIBSON, JJ, absent.