Disposition: ** SEE: OPINION NO. 79-106 (1979) **
** Part II of Part II ** According to Powell on Real Property, Vol 2 1722 (1977), the most important of the nonfreehold estates is the estate for years. Paragraph 246 of the Powell treatise goes on to say; "When the owner of real property leases out his property for a term of years, he carves his prior absolute and unqualified estate into two estates, one in the lessee, the other in himself. For all intents and purposes, the tenant is the absolute owner for the term of the lease, however, the lessor still has an interest in the land. Technically this interest could be called a reversion interest." When the public trust leases governmentally owned property, the unitary ownership fragments, leaving only the reversion to qualify for the ad valorem tax exemption. The vast majority of jurisdictions have held, when presented with the question of taxability of property interests divided between public owners and private owners, that the interest of the private owner is not exempt from taxation. In Moeller v. Gormley, 44 Wn. 465, 87 P. 507 (1906) the Washington Supreme Court analyzed a controversy involving the 30-year leasing by a private party of Seattle tidelands in light of the Washington Constitution whose language on exemptions for government property is nearly identical to that of Oklahoma. In determining that although the fee remained in the State, the leased land should be assessed, the Court concluded: "When a lease is given by the State to an individual or private corporation, the lessee thereby obtains for his or its private use certain rights and privileges in, to and upon such real estate. These rights and privileges constitute private property over which the lessee has, and may exercise, absolute dominion and ownership within the limitations of his or its lease. Why as such property it should not be subject to the general rule of taxation we conceive of no reason." The Illinois Court had occasion to interpret an Illinois statute dealing with exemptions in People v. American Airlines, Inc., 233 N.E.2d 568 (1968). In construing Section 19.6 and 26 of the Revenue Act of 1939, the Court noted that the legislative intent, as well as earlier Illinois case law, clearly mandated the practice of taxing private leasehold interests in tax-exempt properties and private leasehold interests in tax-exempt properties and held that the tax was properly levied upon the land and hangers leased to American by the City of Chicago. In San Pedro, L.A. S.L.R. Co. v. City of Los Angeles, 180 Cal. 18,179 P. 393 (1919) tidelands located in the City of Los Angeles and belonging to the State were leased and subsequently assessed for property taxes. The Court, in holding that municipalities have the power to tax such privately-held interests in public property, relied upon a former hearing of the appeal, which analyzed definitions of property interests and interpreted California constitutional provisions. The earlier opinion, which addressed the traditional practice of assessing only the owner of the reversion differentiated between the totally private lessor-lessee relationship and the arrangement resulting from a public-private lessee. The decision stated: "Where . . . the state owns the reversion, its reversionary interest, like all property owned by it is exempt from taxation. In such a case it cannot be said that the private property right of the lessee is taxed through the medium of the taxation of the interest of the owner. Still less can it properly be said that because the interest of the state is not taxable, the private owner of a leasehold interest should be exempt from paying taxes upon the property that is owned by him." According to Iron County v. State Tax Commission, 437 S.W.2d 665 (Mo. 1968), Rubernoid Company and the City of Annapolis entered into a lease pursuant to RSMO 1961 Supp. 71.790 — 71.850. The land and plant were financed by $5,000,000 in bonds which were to be repaid by the lessee Rubernoid over a 20-year lease period. There were options to renew the lease for fifteen successive terms of five years each, with an option to purchase (conditional upon enabling legislation being passed) fixed at the full amount there required to redeem all outstanding revenue bonds plus one dollar ($1.00). The appeal to the Supreme Court of Missouri dealt in part with the question of whether under the State's constitution the leasehold interest of Rubernoid in the manufacturing and industrial plant owned in fee by the City of Annapolis was exempt from taxation. In making its determination that the 82.75 acre-tract should be taxed, the Court looked to an earlier Missouri decision, State ex rel., Benson v. Personnel Housing, Inc., 300 S.W.2d 506, (Mo. 1957), a case in which a private corporation leasing land from the federal government had been assessed taxes on its leasehold interest in improvements to the property. The Court in Iron County stated: "This decision is authority both for the proposition that a leasehold interest is real property for purposes of taxation and that the exemption accorded the Government from taxation thereon does not extend to a privately owned leasehold in the real estate." The Constitution of the State of Missouri in effect at the time of the Iron County decision stated, in Article X, Section 6: "Article X, Section 6. All property, real and personal, of the State, counties and other political subdivisions, and nonprofit cemeteries, shall be exempt from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies may be exempted from taxation by general law. All laws exempting from taxation property other than the property enumerated in this article, shall be void." The actual meaning of the word "owned" in the phrase "property owned by a county" was considered in the case of Mitchell Aero, Inc. v. City of Milwaukee,168 N.W.2d 183 (Wisc. 1969). The property in dispute consisted of two hangers constructed by Aero on land owned by the county. The case, which traced the judicial evolution of ownership in Wisconsin from adherence to bare legal title language to an emphasis on beneficial ownership as the proper interpretation of the phrase for tax exemption purposes, concluded that for a municipality to qualify for exemption under the statute, there had to be real or true ownership, not paper title only. The Court graphically described the requisites as follows: "Ownership is often referred to in legal philosophy as a bundle of sticks or rights and one or more of the sticks may be separated from the bundle and the bundle will still be considered ownership. What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each case in the context of the purpose of the determination. In this case for exemption one needs more than the title stick to constitute ownership." The Court affirmed the lower court's ruling that based on the nature of the lease, Aero had sufficient ownership to sustain the taxation. The Supreme Court in North Dakota had occasion to construe statutory language nearly identical to Oklahoma's definition of real property in the light of a constitutional provision nearly indistinguishable from ours. In Otter Tail Power Co. v. Degnan, 64 ND 413, 252 N.W. 619 (1934), the Court examined the taxpaying status of a foreign corporation engaged in generation, transmission and sale of electric power for public and private use. The company leased property owned in fee simple by the City of Devils Lake, a municipal corporation exempt from taxation. The Court noted that the language of the North Dakota constitutional exemption — "the property of the United States and the state, county and municipal corporation *** shall be exempt from taxation" — does not refer to property used by the governmental entity but is rather an ownership test. Citing a North Dakota statute, which defined real property for the purpose of taxation, the Court focused upon the phrase "all rights and privileges thereto belonging or in any wise appertaining," language identical to that in Title 68 O.S. 2419 [68-2419] (1971). The North Dakota Court concluded that the lessee certainly had rights and privileges appertaining to the real estate. Affirming the lower court decision to tax the leasehold, the court, in looking at the decisions of other jurisdictions, stated, "The exemption from taxation is to fulfill a governmental purpose in the city, but where there is a right in that property held by a private individual this right is taxable when exercised for private advantage." Moreover, the Oklahoma Supreme Court, when called upon to address the tax exempt status of governmental entities, has consistently held to an ownership test. In Wenner v. Mothersead, 129 Okl. 273, 264 P. 816 (1928), the bank commissioner had foreclosed and taken a sheriff's deeds to real estate of an insolvent bank as security for the payment of funds due depositors. The county assessed the property for ad valorem taxes and the bank commissioner sought to enjoin the collection of the tax. In stating the primary issue of the case, the Court said: "The question involved is whether in fact and in law the title to said real estate thus held by the bank commissioner was really vested in the state as a sovereignty, to do with and dispose of as it saw fit, or whether it was merely vested in the state bank commissioner as a governmental agency of the state and held in trust by him for the benefit of the depositors' guaranty fund. "If the absolute title to such property was actually vested in the state as a sovereignty with power to dispose of same for any purpose for which it saw fit and the state would obviously have power to do with its own public property, then, under section 6, art. 10, of the Constitution, such property would be exempt from taxation." After setting forth Article X, Section 6, at length, the Court observed: "Thus it is seen that all property of the state, that is, all property belonging to the state as such, is expressly exempt from taxation." The Wenner Court considered the realty in question part of the depositor's guarantee fund of the bank commissioner. After analyzing the nature of the guarantee fund, the Court resolved the issue on the ownership test by stating: "And if there were an unexpected balance left in said fund, after all purposes of same had been fully attained, such unexpended balance could not revert to the state to be used by it in defraying the general expenses of state government, but would revert to the individual banks from which it had been collected, and would be prorated to such banks according to the assessments paid into such funds by such banks. It is no sense whatever owned by the state in its sovereign capacity as public property of the state; it is in reality the private property of the banks, which by paying into such fund the assessments made against them, made up the fund itself, but such fund is held under the law by the state through its constituted agents in the capacity and character of trustees for the benefit of depositors. "The title to such property being of this character, the property itself, or property taken charge of as was the property involved here, does not come within the exempting provisions of Article X, Section 6, of the Constitution, and is not exempt from taxation." Sublett v. City of Tulsa, 405 P.2d 185 (Okl. 1965), was a challenge to the constitutionality of the Tulsa-Rogers County Port Authority created under authority of 82 O.S. 1101 [82-1101] et seq. (1961). Petitioners, taxpayers of the City of Tulsa, conceded to the Court that the port authority owned land would be tax exempt under Article X, Section 6, but argued that since private persons would be "using" port authority owned facilities the exemption should be lost. The Court, in Sublett supra, said: "We have determined heretofore that the proposed use of the property will be for a public use or purpose. This question now argued was settled in State, etc. v. Mayes, Treasurer, 174 Okl. 286,51 P.2d 266, wherein essentially the same argument was advanced, since the municipality contemplated the sale of water to individuals and corporations. We held specifically that all property of a municipality was exempt from taxation without regard to the character of the use to be made of the property. Also see City of Hartshorne v. Dickinson, 207 Okl. 305, 249 P.2d 422." We know of no case where the Oklahoma Court has considered the taxable status of a property interest, such as a leasehold held by a purely private person, where tax exempt entities have all the remaining ownership. The closest the Oklahoma Court has ever come is Central Coal and Lumber Co. v. Board of Equalization of LeFlore County,70 Okl. 131, 173 P. 442 (1918). The Court therein held that 150 houses built by a private lessee on Indian lands were not exempt from ad valorem taxes by virtue of the exemption accorded the Choctaw and Chickasaw Tribes. The Court stated: "This lease, under which the houses were erected, was entered into in 1899 and runs for a period of 30 years thereafter. The record in this case shows that the plaintiff in this action had charge of the houses and exercised supervision and ownership over them; that it rented the houses to its employees and collected the rents therefor. We believe that this lease, properly construed, means that the houses do not become the property of the owners of the land until after the expiration of the lease and all of the rights of the lessee under it cease." The following general principles may be summarized. Only the property actually owned by the public trust or its governmental beneficiary or such rights therein as have not been conveyed away are exempt from taxation. All interest in the property whether real or personal held by any entity not entitled to an exemption in its own right are subject to taxation. A leasehold estate is an interest in property which, if held by one not separately and independently entitled to a tax exemption, is taxable for all purposes including ad valorem taxes. The burden of the foregoing falls primarily on leasehold estates held by private persons as tenants of an industrial development trust, whether created pursuant to 60 O.S. 176 [60-176] et seq. (1971), as amended, or 62 O.S. 651 [62-651] et seq. (1971), as amended. Commercial industrial and manufacturing enterprises, generally speaking, are not capable of establishing an entitlement to an exemption from taxation under the other major tax exemption enumerated in Article X, Section 6, that being property "used exclusively for religious or charitable purposes." Whether it may be the "Trust for Furtherance of Public Functions Act", 60 O.S. 176 [60-176] et seq. (1971), as amended, or the "Local Industrial Development Act", 62 O.S. 651 [62-651] et seq. (1971), as amended, either trust form is a constitutionally permissible means by which to accomplish the objective of encouraging industrial development. However, the arguments advanced to support tax exempt status for leaseholds created to finance the trusts piggybacks on the legitimacy of the underlying rationales for establishing the trusts. That is, if the purpose for authorizing the trusts initially has a solid constitutional basis, then any vehicle selected to implement the trust design must also afford the same public benefits and receive commensurate constitutional protection. To attribute constitutional legitimacy to the financial design of public and industrial trusts does not simultaneously imply constitutionally granted tax exemption to private organizations that participate in the trust endeavor for profit. The ad valorem tax exempt status allowed private leaseholds does not spring naturally from the constitutionally valid trust concept itself, which is in essence a financing vehicle for realization of certain societal benefits. These benefits to the public inherent in the trusts are realized by providing the opportunity for industrial development and growth. The public-benefit theory, which has allowed exemptions, stops short of embracing the ultimate use of the trust property for profit-making activities, decidedly not a sanctioned public/governmental function, as evidenced by the case law. The fact that a governmental unit may be the beneficiary of a trust does not, a fortiori, compel the conclusion that the activity on trust property falls within an exclusively charitable class. The reasoning in London Square Village speaks to another fallacious basis for the tax-exemption statutes sought for industries leasing trust property — that benefits such as economic growth and increased employment in the community and state are considered ample justification for exempting industries. As noted in London Square Village, benefits to the public are not interchangeable with exclusive charitable use and therefore such economic advantage afforded the public by industrial lessees is not a constitutionally enumerated basis for exemption. Other jurisdictions have supported this posture. For example, in Illinois Grain Corp. v. Schleman, 144 So.2d 329 (Fla. 1962) the Court rejected a claim that the use to which the premises were put by the sublessee contributed significantly to the economic growth of the port and provided considerable employment, thus serving a municipal purpose and thereby entitling the grain elevator to the same exemption accorded the port authority. Former Oklahoma decisions were overruled by the Supreme Court in a case dealing with both the exemption status of the use of property and the income derived from such property. Oklahoma County v. Queen City Lodge No. 197, I.O.O.F.,195 Okla. 131, 156 P.2d 340 (1945) concerned taxation of a 12-story building located on five lots in Oklahoma City. The Lodge occupied the twelfth floor and rented eleven floors for offices, stores and shops. The county wanted to tax all the property while the Lodge maintained that all should be exempt. Its tax exemption claim was based on the fact that the income from the eleven floors went to further its general purpose, and that the Lodge was a benevolent and charitable association from which no member took any profit. The Court, rejecting this argument and applying the exclusive charitable use test, held that only the twelfth floor could be exempt. Its rationale, stated below, parallels the arguments against allowing tax exemption status to industrial lessees of trust property: "From our discussion it is seen that our former decisions to the effect that the Constitution of this state provides In Immanuel Baptist Church v. Glass, 497 P.2d 757 (Okla. 1972) the Court held: "We are convinced that the proper interpretation of the words "used exclusively" in our Constitutional provision is the use to which the property is dedicated and devoted. In the second paragraph of the syllabus in the case of Beta Theta Pi Corp. v. Board of Comm's of Cleveland County, 108 Okla. 781, 234 P. 354, we held: 'under Section 6, Article 10, of the Constitution the "use to which property is in fact dedicated is the test as to whether such property is exempt from taxation and such "use" is a question of fact to be determined on the evidence.' Therefore, in order for property to be exempt under this provision it must be dedicated and devoted to religious purposes." This position draws even stronger support from a more recent decision which dealt with an appeal by a nonprofit corporation seeking to have a low-cost public housing project removed from the ad valorem tax rolls. In London Square Village, v. Okl. Cty. E. E. Bd., 559 P.2d 1224 (Okla. 1977), the Court reaffirmed that the purpose for which the property is used forms the requisite test regarding exemption from ad valorem taxation and that such use is a question of fact. In holding that the housing project did not qualify as exclusively charitable, the Court said: "We agree that low-rent housing for such persons is a worthwhile cause of beneficial interest to society. However, we are of opinion that such housing is not used exclusively for charitable purposes as required by 68 O.S. 2405 [68-2405](h), 68 O.S. 2405 [68-2405](i) (1971) when each occupant is required to pay for accommodations." Tax exemption of property, the income from which, or the net income from which is used for charitable or educational purposes, stand almost, if not entirely alone, and without precedent or authority, nor are they supported by logic, equity or intimation contained in any provision of our Constitution. Under such decisions any such institution might purchase all the property within a city, county or state, paying for same entirely from savings from taxes. They could operate any character of business in competition with any other business enterprise, and would constitute serious violation of the Constitution. The rule taken to its logical conclusion means the surrender in large part of the state's power to tax, at the will of persons who would chose to do so arrange their business and property affairs. For the reasons given, such opinions, and any others of like effect, in so far as they conflict herewith are hereby specifically overruled." Utilization of the exclusive use test was again endorsed by the Oklahoma Supreme Court in County Assessor v. Carpenters Joiners, Local No. 329, 202 Okla. 162, 211 P.2d 790 (1949). The decision noted that where there is any discrepancy between exemptions declared under a legislative act and those enumerated under the Constitution, the constitutional delineation is to prevail. In determining that the Union was not entitled to tax exemption because the property's use was not exclusively charitable, the Court noted that "the main purpose of the Union being commercial precludes the idea that it is a benevolent institution . . ." The dilemma encountered by the Court in Oklahoma County v. Queen City Lodge No. 197, I.O.O.F., supra., concerning separate assessment was readdressed in Chapman v. Draughons School of Business, 287 P.2d 903, 905 (1955). The Court, which dealt primarily with the procedure for levying taxes, found that only the portion of the property used exclusively for tax exempt purposes could escape assessment. In looking at public and industrial trusts, the Oklahoma Supreme Court recently noted that "any authorized function of the State is recognized by this court as a proper subject for a public trust," and stated that "providing funds for performance of these functions that promote and encourage development of industry and commerce within the state is permitted." Shotts v. Hugh,551 P.2d 252, 254, (Okla. 1976). While promotion and encouragement of industrial development could justifiably be considered a public/ charitable use, the actual subsequent dedication of the property to private, profit-making activities removes it from exclusively charitable use, and thus from any ad valorem tax exemption. Traditionally, charitable usage of property, as noted in Oklahoma decisions, precludes private profit motivated business activity. Even when income generated from business activities is poured back into charitable concerns the property is not exempt. See Oklahoma County v. Queen City Lodge No. 197, I.O.O.F., supra. When private industry leases public property the use immediately ceases to be charitable. The exemption must simultaneously cease. Misinterpretations of Sublett v. City of Tulsa, supra, have caused no small degree of confusion in this area. As previously noted, the Court specifically repudiated nature of use as a test of tax exempt status for government owned property. The confusion which has risen is a result of misreading why the Court was compelled to discuss "public use" in the first place. Petitioners in Sublett, supra, had argued that the power of eminent domain could not lawfully be exercised as the facilities to be constructed as condemned lands were not for a "public use". The Court was amply justified in rejecting this contention. Nevertheless, it has persistently been advanced that the Court's decision in Sublett, supra, stands as authority for the proposition that any use of public trust land, even by a private lessee, is a "public use" entitled to full tax exempt treatment. None of the Oklahoma authorities, including Sublett, can reasonably be said to support that proposition. There are numerous enterprises, whether operated by the trust on behalf of the governmental beneficiary or by some private party, which are of such type as to qualify for tax exempt treatment under the Article X, Section 6, charitable use/public use exemption. However, it would be entirely improper to attribute tax exempt status to the property interest of every business enterprise which happens to have its business located on public trust property. The eligibility of a business for tax exemption under Article X, Section 6, charitable use/public use provisions is determined solely on the basis of fact relative to the nature of the use to which the property is put. Finally, we must consider the impact of the foregoing discussion on existing legislation relative to public trusts. In 1977, the Legislature enacted, inter alia, a provision intended to limit to ten years any ad valorem tax exemption for which lessees of public trust property of an industrial development type, would be eligible. 60 O.S. 178.7 [60-178.7] (1977). The Act only purports to affect trusts created after effective dates of the Act and expansions of existing trusts taking place after the effective date of the Act. The provisions of 60 O.S. 178.7 [60-178.7] are intended to limit the duration of tax exempt status to the first ten years of existence. Inversely, 60 O.S. 178.7 [60-178.7] may be interpreted as authorizing a ten year exemption from ad valorem taxation. Further, 60 O.S. 178.7 [60-178.7] specifically authorizes, as an option to the trust receiving payments of "sums in lieu of ad valorem taxes", a distribution of proceeds formula inconsistent with constitutionally and statutorily mandated methods of ad valorem tax assessment, levy and distribution of tax revenues. As the conclusions reached in this opinion relative to the application of the State Constitution apply to all public trusts regardless of when formed, the ten year exemption in 60 O.S. 178.7 [60-178.7] and the option to make payment of "sums in lieu ad valorem taxes" in any manner which is not in full compliance with the Constitution and statutes controlling ad valorem tax assessments, levies, payment and distribution of proceeds, are void. It is, therefore, the opinion of the Attorney General that private lessees of public trust property, whether real or personal, have a separate, identifiable property interest which is not by reason of any retained trust or governmental beneficial ownership exempt from taxation under either Article X, Section 6 or Article X, Section 6A(f) of the Constitution of the State of Oklahoma, and that each lessee's entitlement to an exemption from taxation for any other reason cognizable under the Constitution, including charitable use, is to be determined as a matter of fact on a case by case basis by reference to the nature of the lessee's use of the property. To the extent 60 O.S. 178.7 [60-178.7] (1977) is in conflict with the provisions of Article V, Section 50, and Article X, 6 and 6A(f), it is unconstitutional. Attorney General's Opinion No. 69-156 is withdrawn. (JOHN F. PERCIVAL) (ksg)