## No. 13,817.

CITY AND COUNTY OF DENVER *v.* BOETTCHER ET AL.

(63 P. [2d] 447)

Decided December 7, 1936.

Mr. Teller Ammons, Mr. Thomas H. Gibson, for plaintiff in error.

Mr. Wilbur F. Denious, Mr. Hudson Moore, Mr. Dayton Denious, for defendants in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

The parties appear in this court in reverse order of their appearance in the district court. We shall refer to them as plaintiffs and defendants.

Plaintiffs brought suit to recover certain taxes paid by them and their predecessors in title on a twenty-five foot strip of ground in the rear of two lots abutting on the loop station of the Denver Tramway Company in the city of Denver. From a judgment in plaintiffs' favor defendants bring the cause here on writ of error. The

only questions necessary for consideration under the assignments of error are whether the complaint states a cause of action—raised for the first time in this court—and whether there is sufficient evidence to sustain the judgment.

The pertinent facts are substantially as follows: In 1895 the Denver Tramway Company entered into a contract with the fee owners of the strip of land in question for its use for station purposes. The manner of use need not be specified in detail, it being sufficient to state only that it was to be so used as to make the shops and stores on the adjoining land of the fee owner accessible to passengers alighting from, and coming to the station to board, the tramway company cars. The "easements and privilege" granted to the tramway company were to continue for a term of forty-five years. Nothing is said in the agreement with reference to the matter of payment of taxes on the land, but during the period covered by this litigation the tramway company reported it to the tax commission as real property of the company, without specifying that it held a limited interest therein under the above mentioned contract. The tax commission, with the land so reported included, fixed the valuation of the tramway company as a public utility for taxing purposes and the tax was levied, collected and apportioned among the various governmental bodies entitled to a revenue from this source, including the City and County of Denver.

In 1920 the fee owners gave a 99-year lease on certain property, including said twenty-five foot strip of land, to Robert H. Fay, subject to the aforesaid contract with the tramway company. This lease obligated the lessee to pay all taxes that might be legally imposed upon the property so leased. The twenty-five foot strip was duly assessed by the City and County of Denver and the holder of the 99-year lease paid the taxes so assessed. This lease was assigned to plaintiffs in 1927. There is no allegation in the complaint that Fay assigned his claim

for taxes alleged to have been illegally levied and collected on the strip of land prior to 1927, but the court admitted proof of such assignment. Whether or not this was error we need not determine, as there is no assignment of error covering the point and in any event it is not material in view of the disposition we make of the case.

The plaintiffs sought to recover and did recover on the theory that the taxes paid by them subsequent to 1927 and by their predecessors in title prior to 1927, were illegally collected in that the property was taxed as the property of the tramway company and that the taxes collected from the plaintiffs and their predecessors in title constituted a double taxation of the same property. They based their complaint on section 7447, C. L. 1921, which requires the board of county commissioners to refund any tax paid which shall be found to be erroneous or illegal.

 Plaintiffs contend that the fact that the tramway company for many years reported the land in question as its property discloses a construction of the contract by the parties which obligates the company to pay the taxes. The tramway company is not before us, and it is fundamental that we cannot bind it by a determination of an issue in which it has an interest in a controversy to which it is not a party. We may and shall assume for the purposes of this determination that the contract as construed by the parties obligates the tramway company to pay the taxes but this assumption is not decisive of the case. The real issue is not, who under the contract was obligated to pay the tax on the property, but whether the defendant city had a right to tax it as the property of the plaintiffs.

 The property involved is real estate. Section 7193, C. L. 1921, so far as material here, is as follows: ''The term 'real estate' includes, first, all land or interests in lands within the state to which title or the right

to title has been acquired from or ratified by the government of the United States, or from the state."

Section 7195, C. L. 1921, so far as here material, provides that "Except where otherwise herein provided, the phrase 'taxable property,' as used in this act, includes real property, personal property, property that savors of both real and personal property, including rights and credits and all intangible property as defined in the preceding section; and for the purposes of taxation it shall make no difference that the possession, use or ownership of any such property is qualified, limited, not the subject of alienation, or the subject of levy or distraint separately for the particular tax derivable therefrom."

Section 7196, C. L. 1921, is as follows: "All property not expressly exempt by law shall be subject to taxation. The term 'property' as used herein, shall be held to include both tangible and intangible property."

Section 7248, C. L. 1921, is as follows: "Any person who has or claims to have an undivided interest in lands, or any lien upon any parcel or tract of land, or any inchoate interest, possessory interest, equitable or other estate less than the fee, may specify in his schedule such undivided share, estate or interest, for the assessment of taxes thereon, in like manner and with like effect as estates of entireties or estates in fee simple are required to be specified in the schedule; and all such undivided estates, shares or interests, and such liens and inchoate estate so specified, shall be assessed and advertised for sale and sold for the non-payment of any tax assessed thereon, and redeemed from such sale in like manner and with like effect as estates in fee and entireties are assessed, advertised, sold and redeemed from sales for taxes, in the manner provided by law. An undivided interest may be redeemed upon payment of a ratable share of the sum required to redeem the whole even though the whole shall have been sold."

Section 7361, C. L. 1921, confers the power of original

assessment of public utility corporations on the tax commission.

Section 7362, C. L. 1921, defines the term "public utility" for purposes of taxation and so far as here material is as follows: "* * * and such term 'public utility' shall include any plant or property owned or operated, or both, by any of such companies or corporations, firms, individuals or associations."

Section 7480 provides for the sale of a tramway company system as a unit for nonpayment of taxes assessed against it.

The property owned and operated by the tramway company, was not a strip of land owned by it in fee, but an interest in land represented by the lease or contract for a 45-year term which it had entered into with the owner of the fee. That such is the proper construction of the phrase "any plant or property owned or operated or both," as used in section 7362, supra, is clear when that section is read in conjunction with section 7479, C. L. 1921, which is as follows: "Every corporation, association or person operating any railway or tramway, electric road, cable road or street railway, located in the streets of any city or town or upon any public road, shall, in addition to the other matters required to be set down in the schedule of property of corporations, specify the particular streets, alleys and public roads by it occupied by its railway, tramway, cable road and other structures; the number and date of the municipal ordinance, resolution, or other public grant authorizing the occupation of such street, alley or public place, and the date when, by the terms of such ordinance or grant, its right expires; *also the particular description of all grants occupied or used in connection with such railway, tramway, cable road or electric railway for depot, station, power house, or other purpose whatsoever.*" (Italics ours.)

Since interests in real property may be segregated for purposes of assessment for taxation to the respective owners of such interests, under section 7248, supra, it

must follow that such interests, when so segregated, are taxable by the taxing authority having jurisdiction over such interests. Being given the option of segregation, if the owner of an interest in real property fails to exercise it, returns the whole property, and voluntarily pays the tax, he cannot complain of a double taxation resulting from such failure.

When the fee owner of the property here involved by his contract granted an interest in the property to the tramway company the latter obviously had the right to have that interest segregated for taxation by reporting only its interest to the tax commission. Since the date of the expiration of its franchises may be taken into consideration in fixing the value of the utility as a unit and since "also the particular description of all grants occupied or used in connection with such * * * tramway * * * for depot, station, power house or other purpose whatsoever" (sections 7447 and 7479, C. L. 1921) must be reported in its schedule, is it conceivable that the legislature intended that a tramway company might return in its schedule property that it did not own and have it taxed merely as a factor entering into the value of the utility when possibly its franchises might be expiring and thus defeat the right of the state otherwise to tax the interest in property held by another on the basis of its actual valuation? We think not. There is no evidence of the fact, and it cannot be assumed that property of any given value entering as a factor into the valuation of a public utility corporation's holdings as a unit will increase the value of the utility in an amount equal to the value of that property.

We cannot say under the record in this case that the tax commission would have placed a lesser valuation on the property of the utility as a unit had it been made to appear to it that the tramway company held merely a limited interest in the property in question instead of a fee simple title; nor that the value placed upon it by the tax commission with the property reported

as owned in fee is greater by the amount of the value of the reversionary interest than it would have been had the tramway company correctly reported that it held merely a grant of the use of the property. To permit a recovery in this case on the theory that the property has been twice taxed to the full extent of its value would necessitate the above assumption, which we cannot make, and would be holding in effect that the owner of the fee or reversionary interest might by contract with the tramway company escape a burden that justly would fall on him under the constitutional mandate that all taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Section 3, art. X, Colorado Constitution. The requirement of section 7479, supra, that all grants used or occupied for stations, etc., in contradistinction to public grants to which reference is made in the first part of the section, be set down in its schedule, is a recognition of the fact that property rights not embraced in the grants are not taxable as a part of the utility value.

If the tramway company chose to report real estate as owned by it in fee when it in fact had but a grant of its use, the excess taxes paid by it in such circumstances cannot be utilized by the plaintiffs to establish double taxation on the reversionary interests which they retained in the property. The tramway company was under duty to report only the grant or interest it held. The City and County of Denver had a right to tax the reversionary interest, and having such right, the tax assessed against the plaintiffs and their predecessors in interest was legal and their sole complaint, if any they make, could amount to no more than that the taxes levied were excessive. Plaintiffs in their complaint allege, That the "tramway company had the full use and enjoyment of said property during all of said time and also paid a tax thereon equal to the full value of said property, and during all of said time the fee or reversionary interest in said property was of no value whatsoever." In *Bord-*

*ner v. County Commissioners,* 92 Colo. 81, 18 P. (2d) 323, we said: ''The complaint charges that plaintiff's equity in such land was taxed. Such equity is a property right notwithstanding it may have no cash value. If of no value, an assessment thereof would be merely excessive and not illegal.'' Counsel for plaintiffs in their brief concede: ''There is good reason for distinction in the procedure required in the case of an excessive tax and in the case of an illegal tax. The former case involves a matter of judgment, by the assessor and, therefore, it is proper to make complaint to him in the first instance. The latter case involves a question appropriate for decision by a court. A review of all the cases of this court upon the subject reveals that every instance where relief was denied for failure to invoke or exhaust administrative remedies involved excessive taxation and on the other hand, no case can be found where this court imposed any condition on the right of recovery of an illegal tax other than the previous payment thereof.

''*Bordner v. Board,* 92 C. 81, relied upon by defendants, recognizes the distinction. There the tax was held to be excessive as distinguished from a double or illegal tax.''

In the Bordner case we said also: ''Although the complaint alleges that the taxes were paid under protest, it does not contain the indispensable allegation that any administrative remedy was invoked. *First National Bank v. Patterson,* 65 Colo. 166, 176 Pac. 498; *Union Nat. Bank v. Commissioners,* 75 Colo. 298, 255 Pac. 851; *People v. District Court,* 87 Colo. 316, 287 Pac. 849; *First Nat. Bank v. Weld County,* 264 U. S. 450, 44 Sup. Ct. 385, 68 L. Ed. 784.''

The complaint and the evidence in this case alike are silent as to the invoking of available administrative remedies, and therefore are insufficient as a statement or proof of a cause of action. For these reasons the judgment is reversed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, and MR. JUSTICE BOUCK concur.