HUDSON COUNTY CIRCUIT COURT.

APPLICATION FOR THE AWARDING OF PROCESS OF SUBPOENA PURSUANT TO R. S. 54:4–16.

Decided October 20, 1943.

For the City of Jersey City, *Charles A. Rooney.*

For the Lackawanna Warehouse Company, Inc., *Wolber, Gilhooly & Yauch.*

BROWN, C. C. J.  In May, 1943, the tax assessor of Jersey City ordered the Lackawanna Warehouse Company, Inc., and its agent, to appear before the assessor to testify and produce such lease or leases, or operating agreements which said com-

pany now has, or may have had on November 10th, 1942, with any person or corporation, on the Freight Terminal Building, located at No. 629 Grove Street, Jersey City, pursuant to *R. S.* 54:4–16. The vice-president and manager of the warehouse company admits the company conducts a warehouse business at and occupies the premises aforesaid for that purpose, with necessary furniture and office equipment. In April of this year the assessor appeared before this court for an order to compel the owner of the premises, the Delaware, Lackawanna and Western Railroad Company, and its agents, to produce the leases or operating agreements it had with any person or corporation on the above mentioned premises pursuant to *R. S.* 54:4–34. It appeared at that time the real property was owned by the railroad company and was assessed as second class railroad property. The petition of Jersey City for an examination was denied. See 21 *N. J. Mis. R.* 164. Article 4, title, Assessment of Personal Property; *R. S.* 54:4–16, the claimed statutory authority for granting the application now under consideration, provides in part: "The assessor shall have power to examine under oath any person or officer of a corporation with regard to the taxable property of himself, the corporation or others. * * * and may compel the attendance of such persons and other witnesses and the production of books and papers by his (the assessor's) order therefor * * *. In case of failure to comply with the order, the assessor may apply to the circuit court * * * which shall award process of subpœna for such appearance and production and may punish for contempt any person disregarding such process." The furniture and equipment of the respondent on the premises in question is taxable personal property. As to the lease or leases, in legal accuracy of construction without statutory directive, are "chattels real." In *Hutchinson* v. *Bramhall* (*Court of Errors and Appeals*), 42 *N. J. Eq.* 372, it was held "a leasehold is a chattel real and goes to the executors or administrators. (1 *Greenleaf Cruise, tit. VIII, ch.* 2, § 19.) A lease for nine hundred and ninety-nine years is a chattel which the administrators may dispose of as they may of other personal property of the estate." In *De Kyne* v. *Lewis*, 139 *Atl. Rep.* 434, it was held

that a term for years while denominated a chattel real is not in strict legal accuracy considered real estate, but, on the contrary, is considered personal property whether the duration is for one or ninety-nine years. At common law chattels real were considered personal property. See *Jones' Blackstone, Book II*, 1234, ¶ 527; 50 *Corp. Jur.* 763; 22 *Am. & Eng. Enc. of L.* (*2d ed.*) 750; 2 *Tucker's Blackstone* 305; 22 *R. C. L.* 65. In the State of New Jersey our courts have considered chattels real or leasehold interests personal property for many purposes. In *Hutchinson* v. *Bramhall* and *De Kyne* v. *Lewis, supra,* leaseholds were determined personal property to be disposed of by the executors and administrators as such. See, also, *McCormick* v. *Stephany,* 57 *N. J. Eq.* 264. In *Ocean Grove* v. *Sanders,* 67 *N. J. L.* 1; *affirmed,* 68 *Id.* 631, a lease was involved in an action of ejectment and was referred to as such and not as realty and the action was held proper where there was a provision for right of re-entry. In *Hutchinson* v. *Bramhall, supra,* it was held that a mortgage on a leasehold interest was properly recorded the same as mortgages on personal property. In the State of New Jersey, in matters of taxation, leasehold interests have generally been classified by the taxing authorities as real property. The practice has prevailed so extensively it has been followed for many years and throughout the state. It has resulted in misapprehension with a loss of taxes to municipalities, as in the Ocean Grove Camp Meeting cases, before the decision in the *Reeves* case, 79 *N. J. L.* 334; affirmed with some disapproval in 80 *Id.* 464; it has resulted in snarled relationships between owners and tenants as mentioned in *Metropolitan Life Insurance Co.* v. *McGurk,* 119 *Id.* 517; *Becker* v. *Little Ferry,* 125 *Id.* 141; *affirmed,* 126 *Id.* 338. The reason for those results stem in some degree from the supposed intention between a landlord and tenant that the tax obligation is on the lessor for his reversioner interest as well as that of the lessee. As stated by Chief Justice Beasley in *State, Morris Canal and Banking Co.* v. *Haight* (*Court of Errors and Appeals*), 36 *Id.* 471, "The rule putting this obligation on the lessor, grew, originally out of the supposed intention of the parties, and the legal

principle is nothing more than the creature of the construction of leases." The practice of taxing leasehold interests as realty was referred to as early as the case of the *State* v. *Blundell*, 24 *Id.* 402, in which it was held: "Taxes on real estate may be assessed against either the tenant or owner, and the fact that by the lease the tenant must pay the taxes, does not prevent taxes from being assessed to and collected from the owner." At page 404 of the same case it is stated, "But the matter is left by the statute at the discretion of the assessor." An assessor is not likely to attempt to unravel the taxable interests between a landlord and tenant if it is within his discretion to tax both interests in the land against the landlord as realty. The laying of an assessment by improper classification as real or personal property does not vitiate the tax imposed. *Becker* v. *Little Ferry, supra.* In *Ocean Grove Camp Meeting Association* v. *Reeves,* 79 *Id.* 334, the Supreme Court held that, "A tenant for years has an interest in land, and is therefore an owner of real property." In that case the court was considering a lease that provided for a renewal which in effect conveyed the fee in the land. In that case the court also stated "In general a tenant is not assessed for his interest in the land because presumably it has no value. The rent which he pays is ordinarily all the land is worth. The estate for years has no market value in such cases * * *." This statement was disapproved by the Court of Errors and Appeals in 80 *N. J. L.* 465. It can readily be determined that a leasehold interest is taxable and that in New Jersey it is usually taxed as realty. In other states the classification and taxation of leasehold interests are different in many states. In Massachusetts in the case of *Donovan v. City of Haverhill,* 30 *A. L. R.* 358, there was involved a statutory proceeding relating to appeals on assessments. It was held that an assessment of real estate for taxation cannot be laid upon leases as an interest in the land which is to be assessed; nor upon the owner of such interest in his position as lessee; that a tax upon real estate whether assessed to the owner of the fee or to the person in possession, is a tax upon the whole land, and not merely on the interest of the person taxed. In the Donovan case the court referred to a statutory law as

authority for its decision. In *Orchard* v. *Wright et al.* (*Mo.*), 20 *Ann. Cas.* 1072, it was held that a leasehold interest for twenty years was personal property and passes upon death of the owner to his executor or administrator. In the footnotes as reported in the above case reference is made to the states of Illinois and Mississippi as holding that leasehold interests are regarded as personal property. At page 1078 of the volume last cited it is stated "words and phrases shall be taken in their plain or ordinary sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical meaning * * *." And further, "chattels are defined as personal property, and that word standing alone, means chattels real as well as chattels personal * * *." In *People* v. *Westervelt*, 17 *Wend.* (*N. Y.*) 676, extensive reference is made to common law authorities uniformly holding chattels real to be personal property. Reference is made to an English authority defining chattels real by saying: "Speaking of leaseholds for years he says: 'They are called real chattels as being interest issuing out of or annexed to real estates, of which they have one quality, viz., immobility, which denotes them real, but want the other, viz., a sufficient, legal, indeterminate duration; and this want it is which constitutes them chattels.'" In *Holzman* v. *Wager et al.* (*Md.*), 22 *Ann. Cas.* 1912A, 619, it was held a term of years of whatever length while a chattel real is but personal property. In *Metropolitan Building Co.* v. *King County* (*Wash.*), 24 *Ann. Cas.* 1912C, 943, involving the question of a proper basis for valuation for tax purposes a leasehold interest was held personal property. A statute in that state defined a leasehold interest as personal property, which is the meaning at common law. To the same effect is the decision in *Harvey Coal Co.* v. *Dillon* (*W. Va.*), 6 *L. R. A.* 628. In this case it was also held that taxing chattels real as personal property was not double taxation.

The footnotes to *Blinn Lumber Co.* v. *Los Angeles County* (*Cal.*), 84 *A. L. R.* 1304, contains copious references to many states, including New York, of well recognized methods of computing the value of leaseholds for taxing purposes. In *Fidelity Trust Co.* v. *County of Wayne*, 59 *A. L. R.* 698,

reference is made to California, Illinois and Connecticut as holding that mining leases are taxed as real property. It would seem, from the cases cited, in some states leaseholds are taxed as personal property. In considering the application before the court it should be borne in mind that a statutory remedy is invoked; *R. S.* 54:4–16, to aid the taxing authorities in ascertaining property to be taxed. The statute *R. S.* 54:4–12 directs that the assessor shall annually ascertain "by diligent inquiry and by the oath of persons to be assessed and others according to the best of his ability and judgment the names of all persons taxable in his district and the true value of all the personal property therein * * *." A liberal construction of the tax laws and discovery procedure thereunder should be given for public purposes, not only that the office of government may not be hindered, but also that the rights of all taxpayers may be equally preserved; *Paulison* v. *Taylor,* 35 *N. J. L.* 184. To follow this liberal construction "chattels" should be taken in its largest significance to include "chattels real." Then again, words woven in our jurisprudence since the early common law should not be disregarded but treated with legal accuracy. The discovery remedy provided in *R. S.* 54:4–16, relates to personal property. The legislature has evidently provided this remedy to assist the assessor in making "diligent inquiry" of all "personal property" in his district. This legislative directive should not be impaired by suppositive constructions of relations between landlords and tenants but should be liberally construed; nor should the legislative mandate be impaired or vitiated by following a practice of classifying personal property as real property unless there is statutory authority for so doing. There does not appear in any reported case a reference to any statutory authority defining leasehold interests in real property as real property. A reasonable and liberal construction of our present revised statutory laws has this effect. *R. S.* 1:1–2 contains the following definitions: "Personal property" includes goods and chattels, rights and credits, moneys and effects, evidences of debt, choses in action and all written instruments by which any right to, interest in, or lien or encumbrances upon property or any debt or financial

obligation is created, acknowledged, evidenced, transferred, discharged or defeated, in whole or in part, and everything except real property as herein defined which may be the subject of ownership." Another definition is: "The words 'property' and 'other property,' unless restricted or limited by the context to either real or personal property, includes both real and personal property." Another definition of real estate and real property is the following: "The words 'real estate' and 'real property' include lands, tenements and hereditaments and all rights thereto and interests therein." From the foregoing the context of the definition of "personal property" restricts the meaning of the word "property" to "personal property" and the words "interest in" refers to personal property. The definition of "real property" includes "all rights thereto and interests therein." This includes all interests in real property. "Leaseholds" or "chattels real" are interests in real property. Courts in construing the law, must in order to discover the legislative intent, look to statutory language in its application to the subject. *In re Hudson County,* 106 *N. J. L.* 62; *In re Freeholders of Hudson County,* 105 *Id.* 57.

It is the determination of this court that while leaseholds, in the past, have been considered as personal property for many purposes, in the matter of taxation it has been the practice to consider them as real property; that the discovery procedure in *R. S.* 54:4–16, does not include leasehold interests as personal property. The petitioner's motion is granted, to the extent that the agents or representatives of the respondent be required to appear and testify concerning the personal property of the respondent in the premises in question, and that a subpœna do issue to that end.