OKLAHOMA INDUSTRIES AUTHORITY, Magnetic Peripherals, Inc., Lear Siegler, Inc., Little Giant Pump Company, Unit Parts Company, Plaintiffs–Appellants and Counter–Appellees,

v.

Joe B. BARNES, County Treasurer of Oklahoma County, George C. Keyes, County Assessor of Oklahoma County, Defendants–Appellees and Counter–Appellants,

v.

Jan Eric CARTWRIGHT, Attorney General of the State of Oklahoma, Defendant–Intervenor–Appellee.

No. 63087.

Supreme Court of Oklahoma.

Sept. 20, 1988.

Rehearing Denied March 15, 1989.

David E. Nichols, Peter T. Van Dyke, Lytle, Soule, Curlee, Harrington, Chandler & Van Dyke, Oklahoma City, for plaintiffs-appellants and counter-appellees.

Robert H. Macy, Dist. Atty., Phyllis L. Walta, Asst. Dist. Atty., Oklahoma City, for defendants-appellees and counter-appellants.

Michael C. Turpen, Atty. Gen. James B. Franks, Michael Scott Fern, Asst. Attys. Gen., Oklahoma City, for defendant-intervenor-appellee.

OPALA, Justice.

Oklahoma Industries Authority [OIA] and four of its lessees appeal from the trial court's decision that a private leasehold interest in tax-exempt property may be assessed an ad valorem tax based on the full value of the fee. Three issues are presented for review: [1] May a private leasehold estate in tax-exempt public-trust property be taxed to the lessee? [2] If the tax is proper, at what rate should it be assessed? and [3] Have the four lessees properly preserved their right to appeal from the tax assessments for 1980 through 1983? We answer the first question in the negative and the third in the affirmative. Because we hold that no ad valorem tax may be imposed on leasehold property, we need not reach the second question.

FACTS

OIA, a public trust created under 60 O.S. 1981 § 176, leased tax-exempt land individually to Magnetic Peripherals, Inc. [MPI], Lear Siegler, Inc. [LSI], Unit Parts Company [Unit Parts] and Little Giant Pump Company [Little Giant] [collectively called lessees]. The lessees are private corporations which operate for profit. The four leases contain renewal options, but do not provide that the lessee may purchase the property for a nominal sum. OIA remains the landowner after the lease expires.

The Oklahoma County Tax Assessor placed these properties on the ad valorem tax rolls in 1980. OIA and the lessees unsuccessfully protested this assessment before the Oklahoma County Board of Equalization. They then appealed to the district court. The defendants below were the county treasurer, the county assessor, and the Attorney General who intervened [referred to collectively as "County"].

The valuation of the four leasehold interests did not increase in 1981 except for MPI's interest. The latter was the only lessee who protested the 1981 assessment to the Board of Equalization. All four lessees sought in 1981 relief from the tax assessment before the Board of Tax Roll Corrections, which in June of 1982 moved to continue the lessees' complaint. None of the lessees filed protests with the Board of Equalization for the 1982 or 1983 tax years. All of the taxes which have been assessed against these properties have been paid under protest. The district court declared that a private party's leasehold in tax-exempt public-trust property is subject to ad valorem tax at a rate based on the fee's value. The court opined that as a

separate, identifiable legal interest a leasehold does not stand exempt by any provision of the state constitution. The district court also reduced the value of LSI's leasehold interest and found that because Unit Parts did not protest its valuation before the Equalization Board in 1980, it could not protest the value before the court.

OIA and the lessees bring this appeal from the trial court's judgment, and the County counterappeals from the reduced valuation of LSI's leasehold interest.

In a 1979 opinion the Attorney General dealt with the issue of taxability of a private party's tenancy in public-trust property and concluded that such leasehold constitutes a separate estate which is subject to ad valorem tax.[1] Our opinion in *State ex rel. Cartwright v. Dunbar*[2] did not reach the question now before us.

In Part I of our opinion we discuss whether, under the legislative scheme presently in force, leasehold interests may be taxed separately from the fee estate. In Part II we will examine whether relieving leasehold interests from ad valorem burden constitutes a constitutionally impermissible *de facto* tax exemption.

## I

## TAXABLE STATUS OF LEASEHOLD ESTATES UNDER THE STATUTORY TAXING SCHEME PRESENTLY IN FORCE

Ad valorem taxability of property is governed in part by 68 O.S.1981 § 2404. This section provides:

"All property in this State, whether real or personal, except that which is specifi-

cally exempt by law, and except that which is relieved of ad valorem taxation by reason of the payment of an in lieu tax, shall be subject to ad valorem taxation."

Real and personal property subject to taxation is defined in 68 O.S.1981 §§ 2419 and 2420. These sections provide in pertinent part:

§ 2419. "Real property, for the purpose of ad valorem taxation, shall be construed to mean the land itself, and all rights and privileges thereto belonging or in any wise appertaining ... and all buildings, structures and improvements or other fixtures of whatsoever kind thereon...."

§ 2420. "Personal property, for the purpose of taxation, shall be construed to include:

(a) All goods, chattels and effects.

(b) All improvements ... upon lands, the title to which is vested in any ... [entity] whose property is not subject to the same mode and rule of taxation as other property; and all improvements on leased lands that do not become a part of the reality. * * * *"

◼ Once an interest in property is statutorily classified as taxable, it becomes assessable. Art. 10, § 8, Okl.Const.[3] The power to tax is reposed in the lawmaking department. Legislative freedom to select some classes or species of property for taxation is restricted only by explicit constitutional inhibitions.[4] Where the legislature has validly omitted certain classes of property from taxation, the judiciary cannot direct that an assessment be imposed.[5] Under the taxing scheme presently in

---

1. A.G.Op. 79-168. By its 1979 opinion the Attorney General withdrew an earlier ruling that reached a contrary result. See A.G.Op. 69-156.

2. Okl., 618 P.2d 900, 904 [1980]. *Dunbar* holds that a private entity holding a leasehold from a public trust *coupled with an executory contract for sale* is deemed to be the "owner" for tax purposes, even though legal title to the property is in a public trust. *Dunbar, supra* at 910.

3. See full text of Art. 10, § 8, Okl. Const., in Part II, *infra*.

4. *Pryor v. Bryan,* 11 Okl. 357, 66 P. 348, 350 [1901]. Only when there is a clear violation of some constitutional command may courts interfere with legislative action. *Continental Oil Co. v. Okl. State Bd., Etc.,* Okl., 570 P.2d 315, 318 [1977] and *Peterson v. Oklahoma Tax Commission,* Okl., 395 P.2d 388, 391 [1964].

5. *In re Gross Production Tax of Wolverine Oil Co.,* 53 Okl. 24, 154 P. 362, 367–368 [1916]; *Board of Com'rs of Oklahoma County v. Ryan,* 107 Okl. 278, 232 P. 834, 836–837 [1925] and *Comanche County v. American Nat. Bank,* 122 Okl. 34, 252 P. 408, 409 [1927].

force, tax liability for all cognizable interests in land is borne by the fee owner.[6] Each parcel of property is treated as a unit; one value is assigned to it and one tax assessed. What the County calls for here is a change in the statutory scheme which would permit the assessment to be made against the user in possession who would acquire taxable status. This cannot be done. *The statutory scheme calls for assessment of land for ad valorem purposes against the person or entity identified by the record as the fee owner, based on that owner's taxable status.*

■ While a lessee's possessory interest may doubtless be a valuable species of property, its characterization as an asset of great market value does not transform that interest, absent some statutory authority, into a separate legal estate that is subject to taxation. To be taxable, an interest in real property must fall within an established legislative classification.[7]

■ Our canvass of the pertinent legislation does not reveal any specific reference to leasehold interests in public-trust property. Because every tax statute must be given strict construction, its application cannot be extended to embrace something not specifically included in the language.[8] County assessors have always treated leaseholds as non-assessable. This construction has been recognized for many decades as the settled law of the state.[9]

Private leaseholds from public trusts are not the only public land interests which stand excluded from taxation. The statutory regime presently in force is equally silent on the taxability of private leaseholds of school land.[10] The opposite is revealed by the Oklahoma Turnpike Authority Act, 69 O.S.1981 §§ 1701 et seq. Section 1714 of that act provides that the turnpike authority's real and personal property, when leased to private roadside concessionaries, shall be subject to taxation in the same manner as any privately owned property. Still another departure from the general regime took place in 1963, when the legislature enacted the Unit Ownership Estate Act (condominium act).[11] That act provides for a unit ownership system in certain real property. Before that enactment, the county assessor could not levy taxes against separate and distinct units of property in a condominium-type development.

Varied interests in real property are recognized in several jurisdictions as separately assessable. Taxability of leasehold estates in those jurisdictions rests upon specific constitutional or statutory provisions which deal with tax exemptions.[12] Some courts give equitable reasons for separating the leasehold interests from the fee and for imposing an assessment upon the former.[13] Other courts note that when a public entity leases its real estate, a valuable privately held possessory interest is created. These courts conclude that there is no just reason why the owners of such

---

**6.** 68 O.S. 1981 § 2419; *Jenkins v. Frederick,* 208 Okl. 583, 257 P.2d 1058, 1062 [1953]; *State v. Shamblin,* 185 Okl. 126, 90 P.2d 1053, 1054 [1939]; *State v. Kirchner,* 185 Okl. 129, 90 P.2d 1055, 1056 [1939] and *In re Indian Territory Illuminating Oil Co.,* 43 Okl. 307, 142 P. 997, 999 [1914], reversed on other grounds 240 U.S. 522, 36 S.Ct. 453, 60 L.Ed. 779 [1916].

**7.** *Board of Com'rs of Oklahoma County v. Ryan, supra* note 5.

**8.** *National Bank of Tulsa v. Oklahoma Tax Com'n,* Okl., 380 P.2d 542, 545 [1963]; *C.H. Leavell & Company v. Oklahoma Tax Commission,* Okl., 450 P.2d 211, 215 [1968] and *Wilson v. State ex rel. Okl. Tax Com'n,* Okl., 594 P.2d 1210, 1212 [1979].

**9.** A long-continued construction of statutory law by an agency charged with its enforcement

must be given great weight. *Peterson v. Oklahoma Tax Commission,* Okl., *supra* note 4 at 391 [1964] and *Atlantic Refining Company v. Oklahoma Tax Com'n,* Okl., 360 P.2d 826, 831 [1961].

**10.** See 64 O.S.1981 §§ 241 et seq. Improvements on preference-right leases are taxable. 68 O.S.1981 § 2420(b). Cf. *Chicago v. University of Chicago,* 302 Ill. 455, 134 N.E. 723, 23 A.L.R. 244 [1922].

**11.** 60 O.S.1981 §§ 501 et seq.

**12.** See cases cited in Annot.: Brunner, Availability of Tax Exemption to Property Held on Lease from Exempt Owner, 54 A.L.R.3d 402–550 [1973].

**13.** *Brunner, supra* note 12.

interest should be permitted to evade taxes while lessees of private property are not.[14]

While some of these cases' reasoning may be found appealing because it parallels our own predilections, the judiciary cannot challenge the wisdom, need or desirability of *any* constitutionally valid legislation. The economic soundness of legislative policy is not a fit subject for judicial reexamination.[15] Respect for the integrity of our tripartite scheme for distribution of governmental powers demands that the judiciary abstain from intrusion into legislative policymaking.[16]

## II

## THE EXCLUSION OF LEASEHOLD INTERESTS FROM AD VALOREM TAXATION DOES NOT REPRESENT A CONSTITUTIONALLY IMPERMISSIBLE EXEMPTION

Several provisions of our constitution are pertinent to the question before us. These are:

**14.** *Brunner, supra* note 12.

**15.** *Application of Goodwin,* Okl., 597 P.2d 762, 766 [1979]; *Application of Oklahoma Capitol Improvement Auth.,* Okl., 410 P.2d 46 [1966] (syllabus 2); *Blackwell Zinc Company v. Parker,* Okl., 406 P.2d 965, 969 [1965]; *Tate v. Logan,* Okl., 362 P.2d 670, 671 [1961] (syllabus 3) and *Application of Oklahoma Capitol Improvement Auth.,* Okl., 355 P.2d 1028, 1031 [1960].

**16.** In *State ex rel. Tomasic v. Kansas City,* 237 Kan. 572, 701 P.2d 1314 [1985], the court concluded that leasehold interests in real property were not taxable. The Kansas taxing scheme does not contemplate a separation of real property into different taxable entities. *Kansas City, supra* at 1331. This position was reaffirmed in *Board of Johnson County Com'rs v. Greenhaw,* 241 Kan. 119, 734 P.2d 1125 [1987] (The lease at issue was treated by the county officials as a sale because it included a lengthy term and gave the lessee absolute use of the property.) The court found that there were practical reasons for not dividing real property into separate taxable interests. Under the Kansas tax collection system, neither the county clerk nor the county assessor was required to determine ownerships in real property which had been created by leases. Many leasehold interests were not recorded. Thus it would be difficult and burdensome for county officials to seek out the owners of these interests. Taxation of leasehold interests would eliminate the certainty which was present in the unitary system of assessment. Finally, it was not necessary to tax leasehold

Art. 10, § 5. "The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

Art. 10, § 8. "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value...."

Art. 10, § 14. "Taxes shall be levied and collected by general laws, and for public purposes only...."

Art. 5, § 46. "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: * * * Exempting property from taxation. * * * "

Art. 5, § 50. "The Legislature shall pass no ·law exempting any property withis [sic] this State from taxation, except as otherwise provided in this Constitution."

Authorized exemptions from property taxes are explicitly dealt with in Art. 10, §§ 6 [17] and 6A, Okl.Const. These sections are:

interests because the assessor already considered the rental income generated by the land when determining the property's taxable value. *Greenhaw, supra* at 1129.

Other states have decided to tax leasehold interests in real property, but these decisions are based on express provisions within their taxation statutes. The California Supreme Court in *Kaiser Co. v. Reid,* 30 Cal.2d 610, 184 P.2d 879, 884 [1947] held that the revenue code provision which taxed "possessory interests" in "land or improvements" was intended to tax an estate for years. This position was affirmed in *De Luz Homes v. County of San Diego,* 45 Cal.2d 546, 290 P.2d 544, 554–555 [1955], and extended to include leasehold estates. Similarly, Washington taxes leasehold interests because of a legislative enactment that specifically so provides. *Trimble v. City of Seattle,* 64 Wash. 102, 116 P. 647, 648 [1911]; see also, *Folsom v. County of Spokane,* 106 Wash.2d 760, 725 P.2d 987, 988 [1986]. Colorado has concluded that its taxation system allows the various interests in real property to be segregated and separately taxed. *U.S. Transmission Sys. v. Bd. of Assessment,* 715 P.2d 1249, 1258 [Colo.1986]; see also, *Board of County Com'rs v. Boettcher,* 99 Colo. 408, 63 P.2d 447, 449 [1936].

**17.** Article 10, § 6, Okl. Const. was amended by State Question No. 597, Legislative Referendum 260, which was adopted at an election held on November 4, 1986. The language quoted in the text is the current version of § 6 and is essen-

Art. 10, § 6. "All property used for free public libraries, free museums, public cemeteries, property used exclusively for nonprofit schools and colleges, and all property used exclusively for religious and charitable purposes, and all property of the United States ... [and] of this state, and of counties and of municipalities of this state ... shall be exempt from taxation until provided otherwise by law. * * * "

Art. 10, § 6A. "Intangible personal property as below defined shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State: * * * (f) All interests in property held in trust or on deposit within or without this State, and whether or not evidenced by certificates, shares, or other written evidence of beneficial ownership. * * * "

█ Central to the problem at hand is the dichotomous division of exemptions created by Art. 10, § 6, Okl.Const. The two separate classes recognized by the cited section are: (1) property that is exempt because of its *use* for libraries, museums, cemeteries, nonprofit schools, religious and charitable purposes, and (2) property *of* enumerated governmental entities which stands exempt regardless of its use. The § 6 exemptions are thus either unconditional or dependent on use. Public land is in the former class [18] and land owned by public trusts with governmental entities as their beneficiaries falls under the unconditionally exempt rubric.[19]

The theme central to the County's argument is that because Art. 5, § 50, Okl. Const., renders the legislature powerless to grant a tax exemption, a constitutionally interdicted *de facto* exemption must be inferred from *every* untaxed private use of public land. Were we to espouse so broad a view and to hold that the exclusion of private non-fee interests in public land does

amount to an impermissible *de facto* exemption under Art. 5, § 50, we would be compelled to withhold *any* efficacy from the unconditional exemption Art. 10, § 6 of our fundamental law explicitly confers upon *all* publicly held land. Neither of these constitutional provisions can be deemed paramount over the other.

The unequivocal § 6 exemption cannot be ignored. The provisions of Art. 5, § 50 and Art. 10, § 6, Okl. Const., are in *pari materia.* These sections have to be considered together and given their full effect to the very limit that a harmonious construction will allow.

The constitution vests in the legislature the authority to classify property for taxation purposes. The terms of Art. 10, § 22, Okl. Const., are:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods."

By general law the legislature may confer upon the proper authorities of any county, city or town the power to assess and collect taxes. Art. 10, § 20, Okl. Const. In our constitutional framework it is clearly the legislature that structures a property regime which will facilitate a classification of the various interests for taxation purposes. Its constitutional authority is not limited by an all-inclusive formula couched in terms of fixed contents. The constitution does not attempt to define with precision the taxable components of property. Rather, its mandate is that *all* property not specifically exempted be taxed at its fair cash value. The legislatively designed taxation scheme presently in force casts the entire tax burden on the fee owner.[20] We find it free from fundamental-law infirmity.

A mineral right in oil-and-gas which has been detached from the surface estate is an

---

tially the same as the version that was in effect when this cause of action arose.

**18.** *Sublett v. City of Tulsa,* Okl., 405 P.2d 185, 197–198 [1965]; *City of Hartshorne v. Dickinson,* 207 Okl. 305, 249 P.2d 422, 424 [1952] and *State v. Mayes,* 174 Okl. 286, 51 P.2d 266, 268 [1935].

**19.** *Board of County Commissioners v. Warram,* Okl., 285 P.2d 1034, 1042–1043 [1955].

**20.** 68 O.S.1981 § 2419; *Jenkins v. Frederick, supra* note 4; *State v. Shamblin, supra* note 4, *State v. Kirchner, supra* note 4 and *In re Indian Territory Illuminating Oil Co., supra* note 4.

example of a non-fee interest in property that goes untaxed under our unitary assessment system. We have long recognized that when the mineral interest is severed, the fee is legally assessable as a unitary tract, and the incidence of ad valorem burden falls on the surface owner [21] who alone bears the liability.[22] Mineral ownership is hence immaterial for purpose of ad valorem assessment.[23] Once minerals are produced, a tax in lieu of ad valorem is levied upon the gross value of the production.[24]

While certainly more than a single property assessment regime may be fashioned by the legislature under the broad language of our constitution, we cannot say that the plan presently in force creates an impermissible *de facto* exemption for private leasehold interests in public land. The County's argument presupposes a clear and sweeping constitutional mandate either prohibiting nontaxable status for public land used by private interest holders or compelling private use of public land to be taxed. If we adopt the County's reasoning, every kind of unassessed private interest in untaxed public land will constitute an impermissible *de facto* exemption. No textu-

ally demonstrable support can be marshaled for this conclusion. There simply is neither explicit nor implicit provision in our fundamental law which commands that *any* kind of leasehold be taxed apart from the fee or that private leaseholds in nontaxable public land be subjected to the ad valorem burden. An impermissible *de facto* tax exemption cannot hence be inferred from the mere existence of an unassessed private leasehold in public-trust property. *If the land stands in fee ownership by a nontaxable entity, the exemption claimed for it flows directly from the constitution absent a statutory scheme that would authorize taxation of land users or occupiers who hold a taxable status.*

As we recognized earlier in this opinion, the legislature could have chosen an assessment regime different from that presently in force. The alternative formats that may be available for adoption must be viewed as no more than policy options. The lawmakers are afforded more than one reasonable choice when implementing the mandate of our fundamental law; the option selected by them cannot be judicially invalidated.[25] The present property assess-

**21.** Early in our case law we noted that this unitary assessment approach was established in part because the legislature recognized the difficulty of taxing the mineral content of land due to absence of definite knowledge about its extent and with respect to the labor and expense required for gaining actual dominion over the minerals. *Meriwether v. Lovett,* 166 Okl. 73, 26 P.2d 200, 203 [1933].

**22.** Under the pre–1979 taxing scheme, if ad valorem taxes were not paid by the fee owner, the holders of severed mineral interests had the right to pay the taxes and assert an equitable lien against the surface in order to protect their interest in land. A 1979 legislative enactment (Sess.L.1979, Ch. 118, § 1, see 68 O.S.1981 § 24323.1) now shields the holders of nonproducing severed mineral interests from loss of their estate—caused by the sale of the entire fee for unpaid taxes—by providing that a certificate tax deed or resale tax deed conveys only the surface rights and mineral interests owned by the surface owners, and that no other interest owned by any other individual or legal entity may be conveyed. See *Dearing v. State ex rel. Com'rs of Land Off.,* Okl., 642 P.2d 226, 229 [1982] in note 6 of that opinion.

**23.** Since oil-and-gas interests are not separately assessed for ad valorem tax, the names of the

mineral owners do not appear on the county treasurer's tax rolls.

**24.** 68 O.S.1981 §§ 1001 et seq.; *Apache Gas Products Corp. v. Oklahoma Tax Com'n,* Okl., 509 P.2d 109, 113–114 [1973].

**25.** When a constitutional provision, which is susceptible of several reasonable meanings, has been construed by statute, the choice of meaning made by the legislature will be given persuasive, if not controlling, effect. *Lundberg v. County of Alameda,* 46 Cal.2d 644, 298 P.2d 1, 6–7 [1956]; *Greater Loretta Imp. Ass'n v. State ex rel. Boone,* 234 So.2d 665, 669 [Fla.1970]; *Fargo v. Powers,* 220 F. 697, 709 [D.C.Mich.1914] and *Plato v. Roudebush,* 397 F.Supp. 1295, 1306 [D.C.Md.1975]. In *Lundberg, supra,* the court articulated this principle in a forceful language: "The presumption is in favor of constitutionality, and the invalidity of an act of the Legislature must be clear and unquestionable before the statute can be declared unconstitutional. We cannot adopt our own interpretation of a provision of the Constitution without regard to the legislative construction, and, where more than one reasonable meaning exists, it is our duty to accept that chosen by the Legislature." See also *Wiseman v. Boren,* Okl., 545 P.2d 753, 757–758

ment system has long been adhered to both by the legislature as well as by the taxing authorities [26] and has also been recognized in a number of decisions stretching over an extended period of time.[27] A construction of constitutional provisions by the executive, legislative and judicial organs of government which has been accepted uniformly for an extended period, raises a strong presumption in favor of its validity.[28] Because no contrary mandate is clearly and explicitly imposed by the constitution, we can find *no* warrant in our fundamental law for disturbing the present ad valorem assessment system.[29]

### III

### PRESERVATION OF APPEAL RIGHT

■ All four lessees protested the 1980 assessment to the Board of Equalization. MPI was the only lessee to file its protest with that Board in 1981; none of the lessees did so for the 1982 and 1983 tax years. All four lessees protested the 1981 assess-

ments before the Tax Roll Corrections Board.

The County contends that the lessees did not properly preserve their right of appeal because they did not protest the tax assessment to the county board of equalization for each year in question. The County argues that going before the board of equalization is required when protesting a tax assessment.

The Ad Valorem Tax Code [Code] [30] outlines the procedure for protesting an increase in valuation before a county board of equalization. 68 O.S.Supp.1985 § 2460. The taxpayer may appeal to the district court from an adverse board ruling.[31] Section 2468 of the Code provides that proceedings before the board of equalization and appeals from its decisions shall be the sole method to correct assessments or equalizations or to abate taxes.[32] Section 2479 creates a county board of tax roll corrections and empowers that board to remedy both erroneous assessments and assessments of exempt property.[33] This

[1976]; *Texas Co. v. State,* 198 Okl. 565, 180 P.2d 631, 635 [1947]; *State v. Grand River Dam Authority,* 195 Okl. 8, 154 P.2d 946, 950–951 [1945] and *Coyle v. Smith,* 28 Okl. 121, 113 P. 944, 948 [1911].

26. See predecessor statutes to 68 O.S.1981 § 2419: 68 O.S.1961 § 15.2; Laws 1941, p. 310 § 3; St.1931 § 12331; and R.L.1910 § 7304.

27. *State v. Shamblin, supra* note 4; *State v. Kirchner, supra* note 4 and *In re Indian Territory Illuminating Oil Co., supra* note 4. In these cases the court recognized that (1) the statutory method of assessment of land for ad valorem taxes is *in rem* and (2) the legislature has not provided for the severance of various interests in realty for tax purposes.

28. *State v. State Election Board of Oklahoma,* Okl., 318 P.2d 422, 426 [1957]; *Allen v. Burkhart,* Okl., 377 P.2d 821, 826–827 [1963]; *Wiseman v. Boren, supra* note 22, *Texas Co. v. State, supra* note 25; *State v. Grand River Dam Authority, supra* note 25 and *Coyle v. Smith, supra* note 25.

29. The Attorney General argues that leaseholds are taxable under Art. 10, § 5, Okl. Const. That section provides that the power of taxation shall never be surrendered, suspended, or contracted away. We summarily reject the argument. The state cannot be deemed to have relinquished its power to tax property which by validly enacted legislation has no taxable status.

Aside from Art. 10, § 6, Okl. Const., the trial judge also considered the applicability of Art. 10, § 6A(f), Okl. Const. That section applies to intangible personal property held in trust. A leasehold interest is an interest in real property for a term of years and does not fall under the exemption afforded by § 6A(f). 60 O.S.1981 § 22.

30. 68 O.S.1981 §§ 2401 et seq.

31. 68 O.S.1981 § 2461.

32. The terms of 68 O.S.1981 § 2468(a) provide: "The proceedings before the boards of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated...."

33. The terms of 68 O.S.1981 § 2479 create a board of tax roll corrections and provide that it is:
"*authorized to hear and determine allegations of error, mistake* or difference *as to any item* or items so contained *in said tax rolls, in any instances hereinafter enumerated,* on application of any person or persons whose interest may in any manner be affected thereby, or by his agent or attorney, verified by affidavit and showing that the complainant was not at fault through his own failure to fulfill any duty enjoined upon him by law...." [Emphasis added.]

taxation scheme creates, in effect, overlapping jurisdiction of both boards in certain instances. Each has statutory cognizance of protests when constitutionally exempt property stands under assessment.[34]

This case clearly falls into the area of overlapping jurisdiction. While no express constitutional exemption is implicated, *the entire taxation scheme created by the constitution is at issue.* We cannot say that there was a facial want of jurisdiction in the tax roll corrections board because the lessees were seeking to be relieved of tax imposed on property they claimed to be exempt. Moreover, the lessees preserved their protests to the 1980 assessment because they protested before the equalization board. The lessees' challenges for the 1981–1983 tax years were also preserved by a pending complaint before the tax roll corrections board in 1981. They were granted a continuance of the latter protest which kept all the challenges in undetermined posture.

In addition to the lessees' individual appeals from the equalization board's denial of the 1980 taxes, the lessees filed actions in the district court for refunds of the 1980–1983 taxes. All of the appeals from the equalization board's denial and the refund cases were consolidated for trial. The county did not challenge the lessees' procedure in bringing separate district court actions for a refund of the 1982 and 1983 taxes on the ground that they had not protested first before one of these county boards. It is too late for the County to challenge the lessees-chosen procedure in this appeal. The County should have objected when the refund cases were first filed in the district court for the 1982–83 tax years.[35]

On this record, it is crystal-clear that *at the time the district court decided the appeals of the four lessees, none of the protests before the two county boards, which included all taxable years in contest, had been finally decided adversely to the lessees.* Because both boards had statutory cognizance of the protests, we cannot say there was a facial want of jurisdiction in the board of tax roll corrections.

We hold that leasehold interests in real property are not taxable under the system presently in force. The lessees preserved the right to appeal from the assessments for the tax years of 1980 through 1983 and are entitled to a refund of the amounts paid for those years. The County's counterappeal from the trial court's valuation reduction of LSI's leasehold interest and from the other issue (of whether Unit Parts had waived its right to contest their leasehold estate's valuation for the 1980 tax year) need not be decided. These questions are rendered moot by today's pronouncement that the leaseholds lack taxable status.

The trial court's judgment is reversed and the cause is remanded for further proceedings not inconsistent with this pronouncement.

HARGRAVE, V.C.J., LAVENDER and SUMMERS, JJ., and REIF, S.J. (sitting by designation in lieu of KAUGER, J., who certified her disqualification), concur.

34. See *Independent School Dist. No. 9 v. Glass,* Okl., 639 P.2d 1233, 1239 [1982]. The taxpayers in *Glass* filed its request for a refund with the tax roll corrections board, but did not seek relief from the equalization board. This court concluded that it was unnecessary for the taxpayer to show good cause for failing to appear before the equalization board because the property was constitutionally exempt from the assessed tax.

35. See *Presbyterian Hosp. v. Bd. of Tax–Roll Corr.,* Okl., 693 P.2d 611 [1984], where we denied the county's challenge to the taxpayer's procedure for its protest against the assessed tax. The taxpayer unsuccessfully complained to the tax roll corrections board about the 1979 tax year. Then the taxpayer filed an appeal in the district court; its petition was subsequently amended to include the 1979 and 1980 tax years. We held that it was too late for the county to challenge the taxpayer's procedure on appeal. The county should have objected when the amendments to the petition were offered in the district court. There, the county could have insisted that the taxpayer file each year with the tax roll corrections board. The holding in *Presbyterian* was limited to protests grounded on a constitutional exemption.

DOOLIN, C.J., and HODGES, SIMMS and ALMA WILSON, JJ., dissent.

HODGES, Justice, dissenting.

Financing of state and county government, including public education, is largely provided through ad valorem taxation. It is, therefore, important that our Court require strict compliance with our constitutional and statutory taxation scheme.

The Constitution of the State of Oklahoma tells us what can be taxed and what cannot be taxed. In my opinion the majority opinion has carved out an unauthorized exemption for a favored class. The following legal precepts compel me to dissent from the majority opinion:

(1) A leasehold for a term of years is an estate in real property. Title 60 O.S.1981 § 22.

(2) All property in Oklahoma, whether real or personal, is subject to taxation except that which is exempt. Title 68 O.S.1981 § 2404.

(3) Exemption from taxation is never allowed except by a special and definite provision in the Oklahoma Constitution. Okla. Const. art. 5, § 50.

(4) The Legislature cannot grant exemptions not recognized by the Constitution, nor enlarge exemptions recognized. *Home–Stake Production Co. v. Board of Equalization*, 416 P.2d 917 (Okla. 1966).

(5) All property of the United States and of this State, and of counties and of municipalities of this State are exempt from taxation. Okla. Const. art. 10, § 6. While public trusts are exempt by this provision, it would take a constitutional amendment to extend this proviso to exempt a lease from a public trust to a private sector for profit.

(6) If these privately owned leaseholds are not taxable, they are a favored class of property—an unconstitutional application.

(7) In the case of *Central Coal & Lumber Co. v. Board of Equalization*, 70 Okl. 131, 173 P. 442 (1918), the lessee constructed 150 houses on a tract of unimproved land, which was owned by a tax-exempt entity. The Oklahoma Supreme Court held the houses were separately taxable to the lessee.

(8) Taxation must be fair and uniform upon the same class of subjects. Okla. Const. art. 10, § 5.

(9) Title 68 O.S.1981 § 2419 provides that all real property for the purpose of ad valorem taxation shall be construed to mean the land itself and all rights and privileges thereto belonging or in any wise appertaining. Certainly, a reasonable interpretation of this statute would include a leasehold estate. Identical provisions in three other states have held such statutes to include a leasehold estate. *Iron Co. v. State Tax Commission*, 437 S.W.2d 665 (Mo.1968); *Application for Awarding of Process of Subpoena*, [21 N.J.Misc. 387] 34 A.2d 239 (N.J.1943); *See Moeller v. Gormley*, 44 Wash. 465, 87 P. 507 (1906).

I believe when a public trust leases its property to a private person or corporation for profit it is no longer the owner of the entire fee estate. Only the reversionary interest is owned by the public trust for the duration of the lease. Consequently, the reversionary interest is the only interest which is exempt under § 6 of the Oklahoma Constitution. I therefore would reject appellants' contention that their leasehold estates are exempt under § 6.

I am authorized to state that Chief Justice DOOLIN, Justice SIMMS and Justice ALMA WILSON join in this dissenting opinion and concur in the views herein expressed.